HILDEBRAND, Appellant, vs. TARBELL and others, Respondents.

*October 23 — November 16, 1897.*

*Practice: Election of remedies.*

A creditor of an insolvent, who brings an action against other creditors to enforce rights claimed by him under certain assignments and transfers of property to them by such insolvent, thereby makes his election to affirm them, and he cannot be permitted, after a delay of several years from the time of learning all the material facts tending to show fraud in the transactions, to change his action into a creditor's action to set aside those assignments and transfers for fraud.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This is an action in equity, commenced in July, 1893, and arising out of certain transactions in May, 1893, when the plaintiff and certain of the defendants were endeavoring to secure payment of their claims against the insolvent firm of Frank A. Lappen & Co. of Milwaukee. The plaintiff was a creditor of that firm to an amount exceeding $20,000. The defendants *Tarbell*, the *First National Bank of Lake Geneva*, *William Plankinton*, assignee of the Plankinton Bank, and *J. C. Coleman* were also creditors of said insolvent firm. On the 12th of May, 1893, the firm practically failed. It had a large store in Milwaukee, and on the last-named day the goods in the store had all been levied upon by creditors. The defendant *Tarbell*, who was a resident of Illinois, arrived at Milwaukee on the afternoon or evening of that day. He was an intimate friend of Frank A. Lappen, the senior member of the firm of Lappen & Co., and he was liable as indorser upon $30,000 worth of commercial paper of the firm, then outstanding. His business was that of a life insurance agent, and he had previously effected a large amount of life insurance upon the life of F. A. Lappen, and

on the 13th of May obtained the firm notes to the amount of $6,700 in payment thereof. He also claimed to have assisted F. A. Lappen & Co. in various ways financially, and on the 12th of May, or early on the following day, he received a note for $5,000 from F. A. Lappen & Co., alleged to be in payment for such services theretofore rendered. On the 12th of May aforesaid the plaintiff, *Hildebrand*, held three judgment notes for moneys advanced to the firm of F. A. Lappen & Co., and early on the 13th of May he caused judgment to be entered upon said notes, and execution issued. Upon receipt of the executions the sheriff went to the store, and by direction of *Hildebrand's* attorney proceeded to levy upon and take possession of the books of account of the firm. The defendant *Tarbell* was then at the store, and claims that attempts were being made, by examination of the books, to ascertain the condition of the firm, with the idea of forming a stock company among the creditors of the firm if the books should show that such a step was feasible. When the sheriff took possession of the books, as aforesaid, *Tarbell* immediately went to see Mr. Williams, *Hildebrand's* attorney, and entered into negotiations to have the books released from the levy.

As to what took place at this meeting there is considerable difference in the evidence of the respective parties. Mr. Williams claims that *Mr. Tarbell* then assured him that his claims against Lappen & Co. did not exceed $20,000; that he (*Tarbell*) already had in his possession an assignment of all the accounts and chattel mortgages of the firm, amounting to $69,000, which assignment was given to secure the claims of himself, *Hildebrand*, and the *First National Bank of Geneva* jointly. Mr. Williams also claims that the assignment was shown to him, and that it was one paper, in which all three of the said parties were named as grantees and no preference was given to either, and that a large bundle of chattel mortgages, or leases, as they are called in the furni-

ture trade, was also shown to him. Upon these representations Mr. Williams claims that he consented to release the levy which the sheriff had made upon the books, and also agreed with *Tarbell* that the accounts should be placed in the hands of Miller, Noyes & Miller for collection for the benefit of all three of the parties. *Mr. Tarbell's* version of this transaction is to the effect that there had been three assignments and executions of the Lappen & Co.'s accounts,— first, to him absolutely; second, to the *First National Bank of Geneva*, subject to the assignment to *Tarbell;* and, third, to *Hildebrand*, subject to the other two,— and that he showed all three of the assignments to Williams at the time of the meeting aforesaid. *Mr. Tarbell* denies, also, that he made any false statement as to the amount of his claims, and denies that he had any bundle of any chattel mortgages or leases at that time, and also denies that any such chattel mortgages or leases were included in the assignment. Three or four days after this transaction, Mr. Williams learned that there were three assignments of the accounts, and that the assignment to his client, *Hildebrand*, was subject to those in favor of *Tarbell* and the *Bank of Geneva*.

The executions upon the plaintiff's judgments were returned unsatisfied on the 13th of July, 1893, and thereupon this action was commenced. The complaint, after alleging the preliminary facts as to the relationship of the parties, and setting forth the judgments obtained by the plaintiff, and the executions, and the fact that they had been returned unsatisfied, sets forth his version of the transactions of the 13th of May, and claims that *Tarbell* procured the release of the levy upon the books by representations to the effect that there was a single assignment of the accounts, in which *Tarbell* and the *Bank of Geneva* and *Hildebrand* all stood equal, and that the accounts and leases thereby assigned amounted to $60,000, and were sufficient to pay the claims of all three of the parties in full; whereas

in fact the assignments had been drawn so as to assign the accounts first to *Tarbell*, then to the bank, and then to the plaintiff subject to both of the other claimants. It is also charged in the complaint that *Tarbell* in fact had only a claim of a few hundred dollars against Lappen & Co., but a further contingent liability of $10,000 for indorsements upon commercial paper, and no more; that the sum of $6,700, which *Tarbell* claims was a debt of said firm to him, was not in fact a debt of the firm, nor payable out of the property of the firm, but consisted simply of notes given for life insurance upon the life of F. A. Lappen personally; and, further, that $5,000 of the indebtedness claimed by *Tarbell* consisted of a note for which there was no consideration in fact, although alleged to be for personal services theretofore rendered, and that both of said last-named notes were given on the 13th of May aforesaid; that a subsequent assignment of said accounts was afterwards made to the Plankinton Bank, and that thereafter the books of accounts were placed in the possession of *Messrs. Winkler, Flanders, Smith, Bottum & Vilas* for collection, under an agreement that no part of the money should be turned over to *Tarbell*, or to the *Bank of Geneva*, until they should prove their claims in court.

It is further alleged that the plaintiff has recently learned that the leases referred to in the assignment are not now in the possession of *Tarbell* or his attorneys, but that the same were subsequently turned over to *J. C. Coleman* in part, and in part to the Plankinton Bank, and are now in possession of said bank and said *Coleman*. Then follow allegations to the effect that *Tarbell* has not proved his claims, and demands that the whole of the sums collected on the accounts be turne l over to him, and is threatening to take a large amount moi e than is actually due him; that there will not be enough realized to pay all the parties; that *Tarbell* secured on the 12th of May certain chattel mortgages upon household furniture, horses, and buggies to the amount of several thousand

Hildebrand vs. Tarbell and others.

dollars, with which he should be charged; that he should be also charged with the amount of the chattel mortgages and leases turned over to *Coleman* and the Plankinton Bank without knowledge or consent of the plaintiff; that *Tarbell* is acting fraudulently, and collusively with Lappen & Co., and that the plaintiff has no adequate remedy at law; and that this action is not prosecuted by collusion with the defense, but for the sole purpose of compelling payment of the plaintiff's own debt.

The prayer for judgment is that *Tarbell* be required to prove his claims against Lappen & Co., and that he be required to exhaust all securities received by him from Lappen & Co. before resorting to the assignment of accounts; that the defendant the *Bank of Geneva* be required to prove its claims against Lappen & Co., and that it be required to exhaust all securities which it has received before resorting to the assignment of accounts; that the defendant *Coleman* be required to turn over and account for the leases which have come into his hands, and that the defendant *Plankinton* be required to turn over and account for the leases which have come into his hands, and that the proceeds from the collection of said accounts or leases be distributed according to the rights of the parties, and that a receiver be appointed to take charge of the money already collected, and that *Tarbell* be enjoined from taking out of the state any of the moneys heretofore collected until the final determination of this action, and that none of the moneys in the hands of the attorneys be turned over to *Tarbell* or the bank.

The defendants answered this complaint, setting forth their version of the transaction and denying all fraud.

In May, 1894, the defendant *Tarbell* was examined at length, under sec. 4096, R. S., and gave his version of the transactions in question. The action came on for trial in May, 1896, at which time, and just prior to the trial, the plaintiff obtained leave to amend his complaint. The facts

were set forth in this amended complaint substantially as in the original complaint, except that it was charged that *Tarbell* received originally from Lappen $28,000 in chattel mortgages or leases, so called, under a secret arrangement or understanding that he should surrender them back to Lappen & Co., and that he had already, on the 13th of May, 1893, surrendered them back to Lappen & Co., who thereupon assigned them to *Coleman*. The amended complaint also charges that *Tarbell* made fictitious and fraudulent claims against the firm of Lappen & Co., and joined with said firm to hinder, delay, and defraud their creditors, among whom was the plaintiff, by taking pretended security of Lappen & Co., and then releasing back the property, and hindering, delaying, and defrauding creditors by such means and devices; and that the plaintiff, as a judgment creditor of said firm, brings this action in his own behalf and in behalf of all other like creditors who may come into the action and contribute to the expenses. The prayer is that all the assignments and chattel mortgages be declared void; that *Tarbell* account for all the moneys that he has received; that a receiver be appointed to collect all moneys not yet collected, and to bring action to set aside all assignments, chattel mortgages, and levies. There is also a prayer for further relief, which it is unnecessary to state.

The court made findings of fact and conclusions of law as follows:

First. That on and previous to the 13th day of May, 1893, one Frank A. Lappen and Owen Lappen, Jr., were copartners doing business as such at No. 317 Grand avenue, in the city of Milwaukee, under the firm name and style of Frank A. Lappen & Co.

Second. That on said 13th day of May, 1893, said firm of Frank A. Lappen & Co. was indebted and under liability to the defendants *Gage E. Tarbell, First National Bank of Lake Geneva,* and to the Plankinton Bank, and to the plaint-

iff herein, in divers large sums of money, and that, being so indebted and so under liability to said defendants and said plaintiff, and each of them, said firm of Frank A. Lappen & Co., on or about the 13th day of May, 1893, executed and delivered to the defendant *Gage E. Tarbell* an assignment of all the accounts and claims against divers firms, corporations, and persons in favor of said firm as the same appeared upon the books of account of said firm at No. 317 Grand avenue, Milwaukee, Wisconsin; and did also at or about said time execute and deliver to the defendant *First National Bank of Lake Geneva* a similar assignment of said accounts, subject to the prior assignment to said defendant *Tarbell;* and also did on or about the same time execute and deliver to the plaintiff a similar assignment of said accounts, subject to the prior assignments to said defendant *Tarbell* and to said defendant *First National Bank of Lake Geneva;* and did also thereafter execute and deliver to the Plankinton Bank a similar assignment of said accounts, subject to the prior assignments thereof to the defendants *Tarbell, First National Bank of Lake Geneva,* and said plaintiff. That among the accounts and claims then appearing upon the books of account of said firm of Frank A. Lappen & Co. claims aggregating about $28,000 were claimed to have been secured by chattel mortgage, and were designated as leases, but that at the time of the execution and delivery of said several assignments of said book accounts to the said defendants *Tarbell, First National Bank of Lake Geneva,* the plaintiff, and the said Plankinton Bank, nearly all of said claims so designated as leases upon said books had long prior to said time been duly sold and assigned to the Plankinton Bank and to one *John C. Coleman* by said firm of Lappen & Co., and said firm of Lappen & Co. had no title or assignable interest therein. That, after the execution of said assignments of said accounts to said defendant *Tarbell,* said defendant *Tarbell* obtained possession of said books of account contain-

ing the same, and thereafter said defendant *Tarbell* surrendered some of said so-called leases then outstanding on the books of said firm to one *John C. Coleman.*

Third. That said defendant *Tarbell* also obtained from said firm of Lappen & Co. and from Frank A. Lappen, a member of said firm, the several securities set forth in the answer of the defendant *Tarbell* in the fourth paragraph thereof, and also received from said firm a bill of sale of certain carpets in the warehouse of Kaufer, Smithing & Co.

Fourth. That said several assignments and securities so as aforesaid executed and delivered by said firm and by said Frank A. Lappen to the said several defendants and said plaintiff were each executed and delivered as collateral security to the then indebtedness of said firm, and the liability of said firm to said several defendants and said plaintiff and said Plankinton Bank, without any fraud, misrepresentation, or concealment by any or either of the parties towards the other.

Fifth. That the merchandise covered by the bill of sale given by said firm to said defendant *Tarbell* upon the carpets in the warehouse of Kaufer, Smithing & Co. never came to the possession of said defendant *Tarbell*, and had been, prior to the execution of said bill of sale, duly seized and held by the sheriff of Milwaukee county under execution levies against said firm of Lappen & Co.; that the aggregate value of all of the said accounts so assigned by said firm of Lappen & Co. to said *Tarbell*, including any so-called leases which were by said *Tarbell* surrendered to said *Coleman*, and the value of all the other securities received from said firm of Lappen & Co. or said Frank A. Lappen, and held by said *Tarbell*, were of far less value than the aggregate amount of the *bona fide* indebtedness of said firm of Lappen & Co. to said defendant *Gage E. Tarbell*, and the *bona fide* liability of said *Tarbell* as accommodation maker or indorser for said firm upon the paper and obligations of said firm,

and which said defendant *Tarbell,* prior to the trial of this action, had actually paid and discharged.

Sixth. That no other assignments of said book accounts of said firm of Lappen & Co., except as herein found, were ever made, executed, or delivered, or contemplated to be made, executed, or delivered, by said firm of Lappen & Co. to said defendants *Tarbell, First National Bank of Lake Geneva,* and said plaintiff, or either of them, and said plaintiff accepted the assignment so executed and delivered to him with full knowledge of the giving and execution of each of the said several prior assignments of said accounts, and without any misrepresentation or collusion by any or either of the defendants.

Seventh. That none of the allegations of the complaint, of fraud, collusion, misrepresentation, undue influence, against either of the defendants, are proven or true.

And as conclusions of law the court finds: First. That the plaintiff is not entitled to the relief prayed for, either in his original complaint or in his amended complaint. Second. That the defendants, and each of them, are entitled to judgment dismissing the plaintiff's complaint upon the merits, with costs. From judgment dismissing the complaint, the plaintiff appeals.

For the appellant there were briefs by *Williams & Robinson* and *Timlin & Glicksman,* and oral argument by *O. T. Williams* and *W. H. Timlin.*

For the respondents there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *Mr. J. G. Flanders.*

WINSLOW, J. The appellant claims that the general finding of fact by which the circuit court exculpated all the defendants from the charges of fraud or collusion contained in the complaint is contrary to the uncontradicted evidence. He claims that three facts appear by the evidence of the de-

fendant *Tarbell* himself which conclusively establish legal fraud in the transactions in question in this action, and render the attempted transfers and assignments void. These three facts are: (1) That the assignment of accounts was made by the firm in part to secure an individual indebtedness of $6,700 owing by F. A. Lappen alone to *Tarbell;* (2) that said assignment was made in part to secure payment of a note of $5,000 given without consideration; (3) that $7,000 worth of chattel mortgages or leases were transferred to *Tarbell* upon the secret understanding that they were to be returned to Lappen & Co. if they wanted to use them, and that they were in fact returned upon the same or the following day, and turned over to *Coleman* and *Plankinton.* It may be admitted for the purposes of this branch of the discussion that these facts were established, and it may be further admitted that they constitute legal fraud, and would entitle a judgment creditor whose execution had been returned unsatisfied to maintain a creditor's bill to set aside the transfers thus tainted with legal fraud, and still the plaintiff in this case may not be able to take advantage of the situation.

It seems quite true that the plaintiff's complaint, as amended in May, 1896, just as the trial of the action began, is in fact a creditor's bill attacking all of the transfers, mortgages, assignments, and other securities secured by *Tarbell* on the 13th of May, 1894, as frauds upon creditors of Lappen & Co., and seeking to set them aside, and to apply the property so fraudulently conveyed to the payment of the plaintiff's judgments. Had he filed this complaint in July, 1893, when he commenced his action, he would certainly be in position to make with great force the claims which he now makes. But the difficulty is that he had no such idea in 1893, when he commenced his action, and evidently did not bring it for any such purpose. His original complaint is not, and cannot be made, a creditor's bill. It is in substance an action in equity

to enforce the assignments made by Lappen & Co., as well as certain representations with reference thereto made by *Tarbell*, and to marshal assets between the parties, first charging *Tarbell* with the proceeds of certain other securities, before allowing him to share in the proceeds of the accounts.

The original complaint did not attack the assignments made by Lappen & Co. to *Tarbell* at all, but rather affirmed and insisted on them. It is true that the plaintiff claimed he was induced to believe that there was but one assignment, in which all stood equally, but he learned in a few days that there were in fact three, and he did not seek to set aside the three assignments so far as Lappen & Co. was concerned, but rather insisted upon them as conveying the accounts, and also insisted that as between *Tarbell* and himself he was entitled to share on equal terms with *Tarbell*. The assignments were not attacked, but the plaintiff's rights under the assignments were claimed to be different from what appeared upon their face.

Now, the plaintiff, when informed of the assignments and transfers, had his option of two courses: He could assent to them, and insist on his rights under them, or he could disavow them, and attack them, and bring action to have them set aside, if he deemed them fraudulent; but he could not take both courses at once, because the remedies are inconsistent. If, knowing all the material facts, he chose by some decisive act to affirm the transactions and take advantage of them, he cannot afterwards change his position, and seek to set aside the same transactions, because he thinks he has mistaken his remedy. The bringing of an action is generally held to be such a decisive act. *Connihan v. Thompson*, 111 Mass. 270; *Sanger v. Wood*, 3 Johns. Ch. 416; *Morris v. Rexford*, 18 N. Y. 552.

The only serious question, therefore, is whether the plaintiff knew the material facts when he elected to bring his

action to affirm the assignments. It is certain that he knew that *Tarbell* had procured the execution of the $5,000 note nominally for services, but in fact without consideration, and the notes for Frank A. Lappen's individual debt, and that *Tarbell* claimed that both of these claims were secured by the assignments, because these facts are set forth at large in the original complaint made in July, 1893. It is also charged in that complaint that *Tarbell* had turned over the chattel mortgages or leases to *J. C. Coleman* and the Plankinton Bank in fraud of the plaintiff's rights. So that in fact there are none of the three elements of fraud now claimed by the plaintiff as ground for avoiding the assignments and transfers *in toto* which were not known to the plaintiff when he filed his bill in equity, unless it be the fact that there was a secret understanding between *Tarbell* and Lappen that *Tarbell* was to return the chattel mortgages or leases to Lappen if he wanted them. This fact, however, the plaintiff learned fully in May, 1894, when he examined *Mr. Tarbell* under sec. 4096, R. S., and he made no change of position after that examination, but allowed his complaint to stand for two years without amendment or intimation of a desire to change his position in any regard. Conceding that the additional facts learned upon *Mr. Tarbell's* examination would have entitled the plaintiff to make an entire change of front, and disaffirm the transactions which he before affirmed, he was certainly obliged to make that change seasonably and with diligence, and this he did not do. We conclude that he remained bound by his first election, and cannot now turn his action into a creditor's bill, seeking to disaffirm and avoid transfers which for nearly three years he had vigorously affirmed. His position is analogous to that of a creditor who proves his claim under a void voluntary assignment. By that act, if done with knowledge or means of knowledge of the facts, he assents to the assignment, and ratifies it so far as he is concerned, and cannot afterwards question its validity. *Lawson v. Stacy*, 82 Wis. 303.

It is very evident, also, that he cannot recover upon his first theory. Conceding that he could now return to the cause of action set forth in his original complaint, the material facts upon which it was based are either unsupported by the evidence or have been found against him upon sufficient evidence, and hence the judgment cannot be disturbed.

*By the Court.*— Judgment affirmed.