# CHARLESTON.

LILLIAN MITCHELL v. JOHN CORNELL.

Submitted March 1, 1921.    Decided March 8, 1921.

1. FRAUDULENT CONVEYANCES—*"Laches," Where Through Death of Witnesses Adverse Party Injured, Bars Relief in Equity.*

   Laches is delay in the assertion of a claim which works disadvantage to another, and where it appears that by reason of such delay the adverse party would be injuriously affected because of the death of witnesses by whom the truth of the situation could be proven, or for other reasons, a court of equity will decline to give relief. (p. 200).

2. SAME—*Equitable Doctrine of Laches Applicable to Suit to Subject Lands Held in Name of Another.*

   The equitable doctrine of laches applies to a suit brought by a creditor for the purpose of subjecting to sale lands which it is claimed by him are the lands of his debtor, but the title to which is held by another in fraud of his rights. (p. 200).

Appeal from Circuit Court, Wood County.

Suit by Lillian Mitchell, as administratrix, against John

Cornell and others.  Decree for plaintiff, and defendants S. L.
Anderson, administrator, and others, appeal.

*Reversed, and bill dismissed.*

*H. B. Dodge* and *Marshall & Forrer,* for appellants.
*William Beard,* for appellee.

RITZ, PRESIDENT:

This appeal seeks reversal of a decree of the circuit court of
Wood county, which decreed to sale, in satisfaction of a judg-
ment in favor of plaintiff's intestate against John Cornell, a
tract of 16¼ acres of land lying near the city of Parkersburg,
claimed by the heirs of J. A. Anderson, upon the ground that
said tract of land was really the property of said John Cor-
nell, and was concealed in the name of J. A. Anderson in fraud
of plaintiff's rights.

It appears that prior to the year 1892 John Cornell was ex-
tensively engaged in the business of purchasing and manu-
facturing ties and other lumber, and incidentally in the gen-
eral mercantile business.  In that year he failed in business,
and according to the allegations of the bill he has never accu-
mulated any property since, and has never actively engaged in
any business.  The debt claimed by the plaintiff was con-
tracted prior to 1892.  In the year 1892 plaintiff's decedent
instituted a suit in the circuit court of Wirt county to recover
the amount of the debt from said Cornell.  Cornell appeared
to this suit and filed his plea of non-assumpsit, and the same
was continued from term to term until the year 1897, when,
in the absence of Cornell, and without the intervention of a
jury to try the issue joined, a judgment was rendered against
him for the sum of $4,200.00, with interest from 1892, and
this judgment is the basis of the plaintiff's claim for relief.

Cornell and J. A. Anderson were brothers-in-law, Anderson
having married a sister of Cornell.  It appears, however, that
Anderson's first wife, the sister of Cornell, died long before
the institution of this suit, and he had married a second time.
It is not contended that any funds belonging to Cornell went
into the purchase of any land in the name of Anderson after
1892, at the time of his business failure, for it clearly appears

that since that time he has had no funds or property. The basis of this suit is that about the time of his failure in 1892, or shortly prior thereto, he had conveyed away two tracts of land, and had taken from the purchasers bonds to secure the unpaid purchase money. It appears that a very small part of the purchase money was paid in cash. These bonds he assigned to Anderson, and the purchasers, failing to meet their obligations and desiring to be relieved therefrom, reconveyed the land to Anderson in consideration that they be relieved from the payment of the purchase money bonds. These deeds were taken, and the facts as above stated are recited in the deeds, and the same were recorded in the proper county clerk's office. However, before Anderson secured these deeds a creditor's suit had been brought against Cornell, and these lands involved in that suit. It appears that Anderson proved in this creditors' suit a claim for a considerable amount, and became the purchaser of the same lands at a sale by the special commissioner, as well as of another tract or two. There is some suggestion that this claim set up by Anderson in that suit was fraudulent as against Cornell's creditors. It was, however, adjudged by that court to be a valid claim against the estate of Cornell, and it can hardly be said that its validity can be questioned in this collateral way. The suggestion is made that the transfer of the purchase money bonds above referred to was made by Cornell to Anderson without consideration, and that he intended to get this property out of his hands so as to prevent his creditors from seizing it, and this is the only substantial basis for this suit.

At the time of the purchase of these lands by Anderson as above stated there was interested with him in one piece thereof a man by the name of W. B. Dillon. It was the understanding, according to Dillon, that he was to have a one-half interest in this piece of land. The title to all of the land was held by Anderson, but it appears that Dillon lived on a piece of it, and that Cornell lived with him. In 1899 this land was sold and a tract of 288 acres was purchased in Calhoun county. Dillon claims that he still had his half-interest in this 288 acres. At any rate, he and Cornell went upon this land and

immediately constructed thereon a house into which he moved his family. Cornell resided with him in the same house, he at that time having no family. Dillon and Cornell conducted timber operations upon the land. The proceeds arising from the sales of timber were deposited in the bank to the credit of Anderson, and the same paid out by Cornell upon checks signed in Anderson's name for the expense of removing the timber and manufacturing it, and for some balance of purchase money upon the land. Dillon states that after the timber operations had been completed he, being unable to carry his half-interest, proposed to Cornell that he would release his interest in the land in consideration of the transfer to him of certain logging equipment which they had, and which had been used in their timber operations. He says that Cornell advised him that he would see Anderson and submit his proposition; that shortly thereafter he did go to Wood county, where Anderson lived, and upon his return informed him that the proposition was accepted, and that he thereupon relinquished his interest in the land and accepted the personal property therefor. This proposition of Dillon carried with it his right to remain in the house upon the land so long as Anderson owned it, and he did remain with his family in this house, and Cornell lived there with him until 1909, at which time the land was conveyed away by Anderson as a part payment upon the tract of 16¼ acres involved in this suit.

It appears that in 1909 the 16¼ acres of land in Wood county was conveyed to Anderson in consideration of $8,750.00, of which consideration the Calhoun county 288 acres was taken for $5,000.00. Anderson assumed a mortgage which was on the land for $3,000.00, and the other $750.00 was paid in cash. The party who conducted this transaction for the former owners states that Cornell approached him in regard to the sale of the 288 acres of Calhoun county land, stating that Anderson desired to dispose of it on account of its remoteness from his residence and his inability for that reason to give it proper attention. He says that he informed Cornell that he had the 16¼-acre tract, and

that if satisfactory arrangements could be made as to the price he might take the 288 acres as part of the purchase money. He informed Cornell the price at which the property could be had, and he says that Cornell told him that he would see Anderson in regard to it and let him know what determination was reached. He says that subsequently Anderson and Cornell went upon the land and examined it, and then Cornell came to his office and closed the transaction by paying fifty dollars in cash at that time, and subsequently by Anderson conveying the 288 acres to the former owners of the 16¼ acres, and paying $700.00 in cash, and assuming the three thousand dollar mortgage. It is shown that Cornell rented this 16¼ acres ever since its purchase as aforesaid, and that he lived in a room in the house upon the premises.

The bill charges that this 16¼ acres is, in fact, the property of Cornell upon the theory that at the time of Cornell's failure he transferred certain of his property as above indicated to Anderson, and that as a result of this Anderson procured the 288 acres in Calhoun county, which subsequently went into the 16¼ acres, and that the $750.00 in cash was derived from funds of Cornell, although there is no showing whatever as to this except that the fifty dollars was paid by Cornell. Cornell and Anderson were both living at the time the suit was instituted, and they each filed an answer denying all of the allegations of fraud, and asserting that the property was the property of Anderson, and Anderson also relied upon the equitable doctrine of laches to defeat the plaintiff's claim. A few months after the suit was brought and before the plaintiff had taken any depositions, Cornell, who was then an old man, departed this life. In a very short time after the institution of the suit, and before any testimony was taken, Anderson's mind became so affected that he was never able to give his testimony in the case, and died before the same was submitted for a hearing. Plaintiff's decedent departed this life in the year 1914, two years before the suit was brought, 22 years after it is claimed the fraudulent transaction was had between Anderson and Cornell, on account of which the land is sought to be subjected in this suit.

The testimony taken on behalf of the plaintiff is almost exclusively made up of statements made by Cornell to a number of people that the 288 acres of Calhoun county land was his land, and that the 16¼ acres was likewise his land, and of the further fact that Cornell had always lived upon the 288 acres of Calhoun county land with Dillon, and upon the 16¼ acres, ever since it was acquired, with the tenant thereof, and upon the further fact that the transfers of the purchase money notes above referred to by Cornell to Anderson were made about the time Cornell became embarrassed, and it is claimed they were without consideration, although no proof is offered upon this question.

As before stated, Cornell died before the testimony was taken, and counsel could not even intelligently cross-examine the witnesses whose evidence had been given as to the statements made by him. If he had been present it may be that the time, place and circumstances under which these statements were made could have been developed, and their force as evidence entirely destroyed. The plaintiff, in order to prevail, must rely upon alleged fraudulent conduct which was committed nearly a quarter of a century before the institution of the suit. It clearly appears that Cornell had never had any property since 1892, and if any transfer of property to Anderson to defraud his creditors was made, it was made prior to that time. The equitable doctrine of laches by which one is denied the right to assert a claim in a court of equity, because of staleness or lapse of time, is well recognized by this Court. It is quite true that mere lapse of time will not effect such a bar, but must be accompanied by some injury or disadvantage to the opposite party, or some conduct which indicates that the plaintiff had abandoned his claim, and only reasserts it because of some advantage arising under conditions brought about either by the action of the other party, by territorial development, or some other like cause. 10 R. C., title ''Equity,'' §§ 142, etc.; *Carter* v. *Price,* 85 W. Va. 744, 102 S. E. 685; *Edgell v. Smith,* 50 W. Va. 349. Many more cases could be cited to the same effect, but these suffice to illustrate the principle.

In this case it appears that Cornell died before he had an opportunity of making any explanation of the testimony offered on behalf of the plaintiff; that Anderson's mind had become so weakened and diseased that he was denied the opportunity of making any such explanation. The transaction happened 24 years before the institution of this suit, and 27 years before the final decree was entered. It may be that if this suit had been brought within a reasonable time a full and satisfactory explanation could have been made of all these transactions. The parties might have been able to show that Anderson paid an adequate consideration for the transfer of the purchase money notes to him by Cornell above referred to, every dollar of which was paid by Cornell to his creditors. The special commissioner who conducted the sale of the lands of which Anderson became the purchaser is dead. The former owner of the 288 acres of Calhoun county land is dead. It appears that the plaintiff's intestate, who died in 1914, 22 years after the alleged fraudulent transaction, lived in the same general neighborhood as the defendants, Cornell and Anderson; that he was well acquainted with them, and that he was vigilant in trying to detect some property of Cornell's out of which his debt could be made. The records in the county clerk's office would have informed him of these deeds made to Anderson, and they would have informed him of the transfer of the purchase money notes by Cornell to Anderson, which is all the information that the plaintiff now has upon that question. There is no reason why, if he had been vigilant, he could not have known in 1892 everything in regard to the transaction between Anderson and Cornell that is shown in this case. When a court of equity sees neglect or lack of diligence on one side, and injury therefrom on the other, it will deny relief.

But the plaintiff contends that the equitable doctrine of laches does not apply to a suit in equity to enforce a judgment lien; that nothing but the bar of the Statute of Limitations will be availing, and that inasmuch as this judgment has been kept alive by the issuance of executions she is entitled to maintain the same. This would be entirely true if she were enforc-

ing a judgment against the lands of Cornell, but the principal object of the suit is to determine that these lands are subject to the judgment. Upon the face of the record the judgment is not a lien upon these lands, and they can only be made subject to the judgment by resorting to equity, and having them declared in effect trust property in the hands of Anderson for the benefit of Cornell's creditors. There is no more reason for denying the application of the equitable doctrine of laches to a suit brought for this purpose than there is to any other suit in equity where it is sought to affect the transactions of parties because of fraudulent conduct. The first question presented in the case is, who is the owner in fact of the land? If it is Cornell, then the judgment is a lien thereon, and it can be enforced. If Anderson is the owner of the lands, then the judgment is not a lien thereon, and the same cannot be enforced, and when the aid of a court of equity is sought for the purpose of determining this question the equitable doctrine of laches is as applicable as it is to any other relief that may be sought. While there seems to be no case in this state in which the doctrine has been applied in a suit by a creditor to set aside a fraudulent conveyance, the reason for its application is the same in such a suit as in any other, and it has been applied in such cases in other jurisdictions without question. 14 Am. & Eng. Enc. of Law, 282; 20 Cyc. 725; *Terry* v. *Fontaine,* 83 Va. 451; *Mickel* v. *Walraven,* 92 Iowa, 423; *Herriman* v. *Townsend* (Me.), 5 Atl. 267; *DeGrauw* v. *Mechan,* 48 N. J. Eq. 219; *Frenche* v. *Kitchen,* 53 N. J. Eq. 37; *Eigleberger* v. *Kibler,* 1 Hill Ch. 113, 26 Am. Dec. 192; *Calhoun* v. *Burton,* 64 Tex. 510; *Kinmouth* v. *Walling* (N. J.), 36 Atl. 891; *Hildebrand* v. *Tarbell,* 97 Wis. 446.

Having come to the conclusion that the plaintiff's right of action is barred by the equitable doctrine of laches, it becomes unnecessary to examine the other questions presented on this appeal.

We will reverse the decree of the circuit court of Wood county and dismiss the bill.

*Reversed, and bill dismissed.*