# CHARLESTON.

JESSE V. BROWNING *v.* MINERVA BROWNING, ADM'X. *et als.*

Submitted May 2, 1922.    Decided May 9, 1922.

1. JUDGMENT—*Cause in Subsequent Suit is Not Barred by Dismissal of Former Suit on Plaintiff's Motion.*

   A cause of action set up in a subsequent suit is not barred on the theory of *res judicata*, by an order of dismissal entered on the motion of the plaintiff, even though issues had been developed in the previous suit by the pleadings. (p. 197).

2. APPEAL AND ERROR—*Objection to Reading of Deposition in Chancery Case and the Ruling Thereon Must be Shown by Record.*

   Ordinarily, an objection to the reading of a deposition in a chancery cause is not available as ground of error, in the appellate court, unless the record shows it was insisted upon in the court below and there overruled. (p. 198).

3. MORTGAGES—*On Issue Whether Deed is a Mortgage the Equitable Rule of Laches May be Invoked by Defendant.*

   On an issue as to whether a deed absolute on its face is in fact a mortgage, the equitable rule of laches may be invoked by the defendant, and, if the situation of the parties and the facts and circumstances warrant application thereof on the theory of abandonment, estoppel or other sufficient ground, it will be applied. (p. 199).

4. SAME—*Relief by Declaring a Deed a Mortgage Held Lost on Ground of Laches.*

   If in such case, there has been long·delay in the assertion of the plaintiff's demand and gross lack of diligence in the prosecution thereof, throughout a period in which the grantee died, and the evidence relied upon by the plaintiff is wholly verbal and consists only of proof of uncertain and indefinite oral admissions of the grantee, susceptible of such explanation as would reconcile them with the hypothesis of a conditional sale of the land, or willingness on the part of the grantee to make a reconveyance in consideration of repayment of the purchase money with interest, out of mere deference to the grantor, in view of relationship, and the only living witness to the transaction, other than the plaintiff, testifies to an absolute sale, relief is properly denied on the ground of laches. (p. 199).

5. SAME—*In a Proceeding to Declare a Deed a Mortgage, Grantee's Answer Denying a Conveyance in Trust Held Not to Include Reliance on Laches by His Widow and Heirs.*

An answer filed by such grantee, in his life time, in a suit against him to have such deed declared a mortgage, in which he denied a conveyance to him in trust to secure the alleged debt and the existence of any agreement or understanding, directly or indirectly, binding him to reconvey as alleged in the bill, and, by way of elaboration of such denial, averred a purchase under the belief that he was getting absolute title without any understanding or agreement that he was to reconvey on payment of the alleged debt and interest, does not preclude reliance upon laches by his widow and heirs. (p. 202).

Appeal from Circuit Court, Logan County.

Bill by Jesse V. Browning against Minerva Browning, administratrix, and others. From a decree dismissing the bill holding that the deed was absolute and not a mortgage, plaintiff appeals.

*Affirmed.*

*Minter & McNemar*, and *E. H. Butts*, for appellant.

*E. L. Hogsett*, for appellees.

POFFENBARGER, PRESIDENT:

The opinion delivered on a former appeal in this cause and found in 85 W. Va. at page 46, discloses the history thereof down to the date of the reversal of the decree dismissing the bill of review for error apparent, which this court reversed. After the cause was remanded, the adult defendants filed their joint and separate answer to the bill and the infant defendants also answered by their guardian ad litem. Upon the pleadings raising the issue as to whether the deed absolute on its face, involved in the litigation, was a mortgage, and the depositions taken and filed, the court below dismissed the bill, holding that the deed was an absolute one in character as well as form and not a mortgage. From this decree, the plaintiff took the appeal now to be disposed of.

Former adjudication is urged as one ground of defense. The suit had been twice instituted and dismissed on the mo-

tion of the plaintiff, before the re-institution of it in July, 1918.    The bill then filed was dismissed on demurrer, as was also a bill of review filed in the court below for reversal of the decree of dismissal.    This court, on appeal, held the bill of review sufficient, reversed the decree  dismissing it, overruled the demurrer thereto and remanded the cause. As the dismissals, antedating, July, 1918, were effected by orders entered on the motion of the plaintiff and not by any express adjudication on the merits, they do not preclude right to maintain the present bill, even though issues had been made up by the pleadings.    *Toney* v. *Sandy Ridge C. & C. Co.,* 84 W. Va. 35; *Bodkin* v. *Arnold,* 45 W. Va. 90; *Riley* v. *Jarvis,* 43 W. Va. 43; *Muse* v. *Farmer's Bank,* 27 Gratt, 252; *Coffman* v. *Russell,* 4 Munf. 207.

Objection is made here for the first time, to the reading of the deposition of John R. Browning, taken pending the suit, under the statute, sec. 39 of ch. 130 of the Code, by way of perpetuation of his evidence, in view of his great age, on the ground of absence of the guardian *ad litem,* lack of evidence of the filing thereof and omission of proof of his death at the date of the hearing.    Failure to set up these objections in the court below amounts to a waiver of them.    *Miller* v. *Gillespie,* 54 W. Va. 450; *Vanscoy* v. *Stinchcomb,* 29 W. Va. 271; *Fant* v. *Miller,* 17 Gratt. 187; *Hill* v. *Proctor,* 10 W. Va. 78.    His deposition is certified to us as being part of the record and the decree recites a hearing upon the depositions taken for both plaintiff and defendants.    The deposition having been read and considered by the court below, without objection, we are under no duty to inquire whether the objections would have been tenable, if set up in that court.

On the former hearing, no laches  sufficient to bar the plaintiff was discoverable on the face of the bill, nor in the former proceedings referred to in it and exhibited by it. But the decision on that appeal was not at all decisive of the plaintiff's right in so far as it depends upon the question of diligence in the assertion and prosecution of his demand. There are instances of the assertion of stale demands by pleadings so drawn as not to disclose laches.    In the con-

clusion of the opinion, this highly significant observation and saving is found; "What the proof may develop, if the cause proceeds to final hearing upon the merits, we cannot of course foresee, and therefore do not pretend to say whether the laches of the plaintiff, if any, is such as precludes the grant to him of the relief he seeks."

By several witnesses, including the aged father of the plaintiff, and his deceased adversary, David T. Browning, admissions by the latter, of his intention to reconvey to the former, the land in controversy, upon payment of money with interest, were proved; but none of the admissions so proved go far enough clearly to reveal in detail the nature of the original transaction between the brothers, culminating in this litigation.    Except in one or two instances, the admissions, as proved, were so general and indefinite in their terms that they may have meant no more than a willingness on the part of the vendee to reconvey on payment of a sum equal to the consideration recited in the deed, $600.00, with interest, as a mere matter of grace or courtesy, or an obligation to reconvey in conformity with the terms of a conditional contract of sale.    As given by one witness, the admission was that, when the plaintiff paid him (the grantee) back the money, he would give the land back.    As related by another, it was that the grantee would reconvey, but only upon condition that the money he had let the grantor have should be "refunded," and that, on failure to pay it within a certain time, the land was to be retained.    Another witness said the grantee had told him he had bought the land, but that his brother could redeem it, if he ever got able to do so, and, further, that he had named the amount of money, $600.00.    Another swore the grantee had said, "If Jesse pays me my money, I am going to turn the place back." Another said she had heard the grantee tell his wife, in the course of a dispute, that the land belonged to the plaintiff, "when he paid his money back," and, further, that he had said there was a mortgage on the land.    John R. Browning testified that David T. Browning had told him that he was to let his brother have the money and get the land, as he "understood, for collateral security or something, and

when Jesse V. Browning would pay his money with interest, he would get the land back." Although this version purports a conversation antedating the conveyance, the witness said he thought it occurred after the deed was executed. He further said that, in another conversation had in an effort to effect a compromise, David T. Browning had said "somebody would fool" his brother out of the land, if he let him have it, wherefore he might as well keep it. Another witness said he had expressed fear that the land would do his brother no good, if he got it back. The widow of David T. Browning testified that the transaction was an absolute sale and that the purchase money was paid in part with cattle. She also denied the statement imputed to her husband, by the witness who said she had heard him say there was a mortgage on the land and that it belonged to the plaintiff. Another witness for the defendants testified that he had seen the plaintiff driving the cattle away and had heard him express satisfaction with the sale. This witness added that both parties had told him, sometime after the transaction, that the land was to be reconveyed, if the plaintiff "got the money up in time, within a short time, with interest."

In all of this testimony, there is very little language necessarily importing a loan of money upon land as security. Only one witness mentions a mortgage, and her statement is positively denied. John R. Browning's testimony is indefinite. If he could have remembered the conversation in detail and stated it fully, it might have disclosed a conditional sale. The same observation may be correctly made as to the testimony of the witnesses who used the words "refund" and "redeem." If David T. Browning had been alive and, testifying in the cause, had stated such a contract and execution of the deed in conformity therewith, all of these witnesses, explaining the meaning of the terms they used, might have reconciled their evidence with his. Or, he might have said, in explanation of his admissions, that he was under no obligation to reconvey, but would have done so out of mere deference to the wishes of his brother. And, if he had been alive and so testified, his evidence would have found corroboration in the circumstances disclosed. No right of redemption was

claimed for several years after execution of the deed, nor until the land had been enhanced in value by the prospect of a railroad through the community in which it lies, or the actual construction thereof. The transaction has not been attended by any of the facts usually regarded as indicia of the relation of mortgagor and mortgagee. On the execution of the deed, the grantee took possession of the land, used it and paid the taxes on it. It is not claimed that the deed secures an antecedent debt, nor that the grantee held any written evidence of indebtedness of the grantor to him, after the execution of the deed.

These observations, facts and circumstances make it manifest that the death of David T. Browning has placed his widow and heirs at a very great disadvantage in this litigation. The plaintiff's case rests altogether upon oral evidence of the most indefinite and uncertain character, and his long delay in the assertion of his demand and lack of diligence in the prosecution thereof have placed him in an advantageous position and his adversaries in one of serious embarrassment. Although the law does not permit the plaintiff himself to speak, he has introduced numerous disinterested witnesses whose testimony could be denied or so explained as to render it harmless, by the deceased party, if he could speak, and he no doubt would have contradicted or explained it, if it had been taken while he was alive. We are clearly of the opinion therefore, that, under these circumstances, the equitable rule of laches precludes him from the relief he seeks.

If the relation of mortgager and mortgagee were admitted or proved by documentary evidence, the rule would not apply. To bar right of redemption from an admitted or clearly proved mortgage, under the rule of laches, a very strong case must be made out. It is seldom, if ever, done. But the issue here is whether there ever was a mortgage. To say there was, it is necessary to overcome a strong presumption against it, arising from the form and terms of the deed. In such cases, laches applies. *Drake* v. *O'Brien,* 84 W. Va. 678. The death of witnesses whose testimony is vitally necessary to determination of the right of a controversy, within

a long period of delay in the assertion of a demand, applies the rule.    *Mitchell* v. *Cornell,* 88 W. Va. 194.

Against the conclusion foreshadowed by what has been said here, the appellant invokes the terms of an answer filed by David T. Browning, in his life time, to one of the bills of the plaintiff, as precluding such testimony as it is assumed he might have given, if he had been alive when the depositions herein were taken.    In one part of that answer, he merely denied that he had taken the land in trust, as alleged in the bill, and that there was any understanding or agreement between him and the plaintiff, directly or indirectly, whereby he was to reconvey the land upon the payment of $600.00, as alleged in the bill.    In another part, he set out the consideration, and averred silence of the plaintiff, from August 7, 1903, until February 1, 1912, and a purchase of the land under the belief that he was getting absolute title, without any understanding or agreement, whatever, that he was to reconvey it upon the payment of $600.00 with interest.    This last part of the answer is no more than an elaboration of the denial found in the other part, and must be considered in connection therewith and with the allegations of the bill.    Fairly construed, the answer is no more than a denial of the grounds of relief set up in the bill.    It seeks no affirmative relief.    It does not specifically deny the existence of a conditional sale and its averment in general terms, of an absolute conveyance, cannot justly be interpreted as a deliberate denial thereof.    Moreover, he could, if living, testify that the admissions imputed to him were no more than expressions of a merely gratuitous purpose.    No relief from the bar of laches is perceived in his answer. The answer of the widow and heirs avers a purchase and conveyance, without any agreement for reconveyance upon any contingency whatever; but that would not preclude them from reliance upon evidence of any other ground of defense, contradicting that adduced by the plaintiff, in support of his bill.

For the reasons stated, the decree complained of will be affirmed.

*Affirmed.*