Pearson, J.
 

 John Arn died in 1814, leaving a will, in which is this clause : “ I lend unto my daughter, Patience Harrell, a negro girl, Lucy, during her natural life. Then, I give said negro girl to the heirs lawfully begotten of her body.” Patience was the wife of Hodges Harrell, w’ho, soon after the death of the testator, took the negro girl into his possession, and kept her and her issue until his death which was in 1839. He died intestate, and left him surviving, his widow, the said Patience and three children by her, who are defendants; and also three children, by a former marriage, and several grand children, the children of a daughter by his first wife, who are plaintiffs. One Brittain administered upon his estate, and allowed the widow and her children to keep the negroes, under the belief,
 
 *124
 
 that they were entitled to them, by the will of John Arn. They have kept the negroes ever since, and have divided them among themselves. Brittain, the administrator, died several years ago intestate, and the defendants, Richard and William Brittain, are his administrators. The plaintiff, Williams, is the administrator,
 
 de bonis non,
 
 of Hodges Harrell. This bill was filed in 1843. The plaintiffs allege, that the slave, Lucy, and her increase were, in fact, the property of Hodges Harrell, and ought to have been divided by his administrator among
 
 all of his
 
 children and his widow; and that the administrator committed a mistake when, in 1839, he allowed the widow and
 
 her
 
 children to. take the slaves as their exclusive property; and they pray that a division may now be made. They insist, that their equity is not barred by the long adverse possession, because it commenced and has ever since been held under a mistake, “which they are advised will now be rectified in this Court, especially as they were not informed of their rights, until a very short time before they filed their bill, they being in humble circumstances, uninformed, and not having before consulted counsel.’
 

 They insist, in the second place, that, if their equity to have the slaves divided is barred, as against the widow and her children, it was the result of gross negligence, if not fraud, on the part of the administrator of Hodges Harrell; and that they have an equity t<> hold his administrators liable lor the value of the slaves, to the extent of their interests as distributees of said Harrell.
 

 The defendants demur ; and the case was removed to this Court.
 

 The first question raised, is, can the objection, that the equity of the plaintiffs, to have a division of the slaves, is barred by the long adverse possession, be taken by a demurrer? There is no doubt of it. The possession, in
 
 *125
 
 this case, not only constituted a bar to the action, but confers a title by force of the Statute;
 
 Hovenden v Annesley,
 
 1 Scho. and Lef. 637. There is as little doubt upon the other question. The fact, that the adverse possession has commenced and continued under a mistake as to the rights of the parties, is not an avoidance of its legal effect. There is no saving clause for those who are ignorant, uninformed, in humble circumstances, and who neglect to consult counsel. “
 
 Leges vigilantibus non dormientibus factos, sunt.”
 

 We are also of opinion that the plaintiffs have no equity against the representatives of the administrator, by which to charge them with the value of the slaves. Under a mistake, as to the rights of his intestate, he allowed the slaves to go into the possession of the widow and her children. Under a like mistake, as to their rights, the plaintiffs allow this possession to be held so long that their rights are lost. Upon what principle should the loss be,shifted from them, and put on the administrator ? They did not remonstrate against his acts, or assert any title in themselves. He acted under a mistake, which was common to them all. If any one, or all of them had been in his place, they would have acted precisely as he did. What right have they, then, to charge him with “gross negligence, if not fraud?” Was he bound to know more about their rights than they did themselves ? Are they not just as obnoxious to the charge of gross negligence, in sleeping on their rights for near ten years, as he is ? His act did not deprive them of their rights, it wTas their own neglect, which produced that effect. The fact is, there was an honest mistake all around; not one of the parties had ever heard of
 
 “
 
 the rule in Shelly’s case.” This, so far as the plaintiffs are concerned, was their misfortune ; and the loss of their rights is to be ascribed to their ignorance and neglect, in not applying to
 
 *126
 
 counsel in time to prevent the effect of the long adverse possession. x
 

 Feb Curiam. Bill dismissed with costs.