# CHARLESTON.

## DAVIS *v*. GRAND RAPIDS SCHOOL-FURNITURE CO.

Submitted February 4, 1896—Decided March 25, 1896.

1. CONTRACT—BREACH OF CONTRACT—RIGHT OF ACTION.
    Where a party to a contract notifies the other that he does not intend to abide by or perform it, the other may bring an immediate suit for such damages as he may thereby have sustained, without waiting for the time of performance to expire.

2. CONTRACT OF SALE—MEASURE OF DAMAGES.
    When a vendor fails to comply with his contract, the general rule for the measure of damages is the difference between the contract price and the market price of the article at the time of the breach.

3. CONTRACT OF SALE—MEASURE OF DAMAGES.
    But when the circumstances of the case are such that the vendee can not go into the market and supply himself with the article, the rule does not apply, for the reason of it has ceased.

MARCUM, MARCUM & SHEPHERD for plaintiff in error,

cited 1 Gratt. 364; 8 Gratt. 16; 82 Va. 614; 3 W. Va. 445; 4 W. Va. 107; 8 W. Va. 568; 14 W. Va. 1; 16 W. Va. 245.

SIMMS & ENSLOW for defendant in error, cited 108 Pa. St. 220; 73 Pa. St. 365; L. R. 9 Q. B. 473; 2 Sedg. Dam. § 742; 2 Schoul. P. Prop. §§ 572, 585; 2 Casey, 143; 150 Mass. 426; 56 N. W. Rep. 763.

HOLT, PRESIDENT :

On writ of error to a judgment of the Circuit Court of Cabell County, on the 1st day of April, 1895, in favor of plaintiff, Davis, against defendant, the Grand Rapids School-Furniture Company for six hundred and sixty six dollars, for damages in failing to deliver certain opera chairs bought of the company.

The facts are as follows: The plaintiff, B. T. Davis, was the owner of an opera house in the city of Huntington, which he had leased to a party, and had agreed to have it furnished with opera chairs put in place by the 1st day of September, 1893. The Grand Rapids Company, among other things, sold such chairs; and they had an agent, W. H. Kratz, in Huntington, whose business it was to sell them and put them in place. By letter dated 27th February, 1893, the company wrote to plaintiff, Davis, that they were informed by Mr. Kratz that plaintiff was ready to place his order for opera chairs, asking him to come on and examine their chairs, closing as follows: "If your time is limited, and you can not make the trip, any order you may place with Mr. Kratz will be satisfactory to us, and be faithfully fulfilled, you may depend. He is so closely identified with the interests of our company that he can offer you as liberal terms as we could, and this we have authorized him to do." And, by letter of the same date, they wrote to their agent, Mr. Kratz, saying among other things: "We must have this order. Rather than to permit A. to capture the same, we want you to cut prices wide open, should he, for any reason, conclude to purchase at home, and you must face strong competition. Use your own judgment about prices, but make the sale. We give you carte blanche to capture this job, and don't want you to lose it,

no matter what the circumstances may be." Thereupon he concluded a purchase of the chairs, four hundred and eighty eight of style No. 2 with plush rail, one hundred and twenty of style No. 2 with plush seat and rail, and 4 of style 101, at the price of one thousand, seven hundred and ninety one dollars and twenty cents, in part upon credit. The company, when notified of the sale, insisted on cash payment. Mr. Kratz notified plaintiff, and the contract, with his consent, was made a cash sale; that is, Davis agreed to pay all charges for freight, drayage, *etc.* on the chairs, to receive the same, and, within ten days after the seating should be set in place, to accept and settle therefor, and pay to the company one thousand seven hundred and ninety one dollars and twenty cents.

It was about thirty days after the purchase before plaintiff, Davis, heard anything from the defendant company, when their agent, Mr. Kratz, gave him verbal notice that his company had refused to fill the contract, and it was returned. He shows that he was ready, willing, and able to carry out the contract on his part. This chair was patented, and could not be bought in the open market, and had been selected for its strength as well as the style, as the opera house was put to many uses, such as holding political meetings, conventions, *etc.* Davis again turned out to buy, having but little time to go on; and, after examining several kinds of chairs, succeeded in about ten days in buying the same number of chairs for the same aggregate price. It was a chair not so strong, and therefore not so well suited for his purpose, but was the best he could do under the circumstances; and two years' experience showed that, for his purpose, they were not worth more than half as much as the chair first contracted for.

As soon as notified of the defendant's unconditional refusal to perform their contract of sale, he brought this suit, which was instituted on the third day of June, 1893, for damages sustained by reason of the company's refusal to comply with their contract, which contract was set out in full in the declaration, and was declared on specially. The defendant appeared, demurred to the declaration, and, that being overruled, pleaded the general issue. On trial the

jury found for plaintiff, and assessed his damages at six hundred and sixty six dollars, for which the court gave judgment after overruling a motion for new trial, and the defendant obtained this writ of error.

1. The demurrer to plaintiff's declaration was properly overruled, as it contained a special count in *assumpsit* for the breach of the written contract, which was sufficient.

2. The circular advertisement of the defendant, sent or given by them to plaintiff, in which they commend their chairs, and point out their great strength, beauty, and lasting qualities, was not irrelevant or improper evidence, and was properly permitted to go to the jury.

The contract sued on was a printed form, with the blanks filled up, and was signed by the Grand Rapids School-Furniture Company, per W. H. Kratz, and by B. T. Davis. On it was printed the following: "All contracts entered into by agents are made subject to our approval, and are not binding on us until passed upon and accepted by us,"—signed with the name of the company. On this, defendant asked an instruction, No. 1, to the effect that the contract was not binding on it until the same had been passed upon and accepted by the company. This instruction was properly refused, for, under the circumstances already given, this contract did not depend upon any such approval to make it binding upon the company.

Instruction No. 2 was based upon the hypothesis of collusion between the plaintiff, the agent Kratz, and the agent of the firm that sold plaintiff the chairs bought and put in place. This was properly refused, there being no evidence tending to prove any such collusion.

Instruction No. 4 was in effect that if the contract was binding, then the defendant had until the 15th day of August, 1893, in which to comply with the same, and no right of action could accrue to the plaintiff until the time which defendant had in which to comply had fully expired. This was properly refused, for defendant had notified plaintiff that they did not intend to comply at all, and plaintiff had a right to take them at their word, and sue for whatever damage the plaintiff thereby sustained. *Jewitt* v. *Brooks*, 134 Mass. 505; Bish. Cont. § 1428.

Instruction No. 3, asked by defendant, and refused by the court, was as follows: "The court further instructs the jury that the measure of damages in an action for damages for a breach of an executory contract for the failure to deliver personal property thereunder is the difference in the value of said personal property at the time and place of delivery and the contract price agreed upon between the parties, and stipulated for in said contract." When a vendor fails to comply with his contract, the general rule for the measure of damages undoubtedly is the difference between the contract and the market price of the article at the time of the breach. This is for the evident reason that the vendee can go into the market and obtain the article contracted for at that price. But, when the circumstances of the case are such that the vendee can not thus supply himself, the rule does not apply, for the reason of it ceases. *McHase* v. *Fulmer*, 73 Pa. St. 365. Here, as we have seen, the chair was a patented article, made to order and not obtainable in the open market. Therefore the loss sustained by the buyer must be computed in some other way. 2 Schouler, Pers. Prop. § 572; 2 Sedg. Dam. § 742. Here the evidence shows that the plaintiff, as soon as informed of defendant's refusal, attempted with diligence and care and in good faith, to make his loss as little as possible, which was, according to the proof, at least as great as the sum found by the jury; so that defendant's motion to set aside the verdict, and grant a new trial, as contrary to the evidence, was also properly overruled, for the evidence justifies a finding for the plaintiff, and for the sum found, which appears from this record to do substantial justice between the parties.

The judgment complained of is affirmed.