# CHARLESTON.

### SALLIE E. STRICKLER v. C. M. STRICKLER.

Submitted October 24, 1922.    Decided October 31, 1922.

1.    TRUSTS—*Resulting Trust in Land Enforceable Only in Equity,*

A resulting trust in land can be enforced only in a court of equity.    (p. 187).

2.    LIMITATION OF ACTIONS—*In Suit to Enforce Resulting Trust in Land Statute of Limitations Not Applicable.*

In a suit brought to enforce such a trust, statutes of limitation have no application.    (p. 187).

Appeal from Circuit Court, Cabell County.

Suit by Sallie E. Strickler against C. M. Strickler to compel defendant to convey certain alleged interest in real estate. From a decree for plaintiff, defendant appeals.

*Affirmed.*

*Warth & Peyton,* for appellant.

*J. P. Douglass,* for appellee.

MEREDITH, JUDGE:

In November, 1919, plaintiff filed her bill against defendant in the circuit court of Cabell County alleging that in August,

1914, she, being then in Raleigh, North Carolina, received a letter from the defendant wherein he stated that he desired to purchase property in the city of Huntington, West Virginia, and which he could buy for the sum of $3200 cash, and in which letter he proposed to the plaintiff if she would send him $1000, he needing that amount to complete the purchase, that he would purchase the property and would treat the plaintiff as a partner in the purchase with him, and would take title thereto in their joint names, and that acting accordingly she sent him the $1000, that he purchased the property described in the bill at the price of $3200, $1000 of which was furnished by her, and $2200 of which was furnished by him; that he took title to the property in his own name without her knowledge or consent; that in September, 1919, she demanded an accounting and the payment of her money together with her proportionate part of the increase in the value of the property or a deed for her interest therein, and that defendant refused either to pay her or to convey her her interest in the property, and the bill asks that he be compelled to convey to the plaintiff a five-sixteenth interest in the house and lot.

The defendant demurred to the bill; the demurrer was overruled, and he filed an answer in which he says that when he found he could purchase the real estate mentioned he proposed to plaintiff that she should give him $1000 with the understanding that in consideration of it he should purchase property, or otherwise provide a home, and bring her and her children to Huntington, furnish them a home, and contribute whatever was necessary for their proper support and maintenance until such time as her children should finish their education or be in a position to support themselves and their mother. He admits that she sent him $1000 which was used in the purchase of the property; that plaintiff and her children and defendant moved into the property in September, 1914, and lived there as one family until October, 1919, when plaintiff with her children returned to Raleigh; he denies that he agreed to treat her as a partner in the property or that the legal title was to be taken in their joint names,

and he denies that the title to the property was taken in his name without her knowledge and consent.

The circuit court found that there was a resultant trust arising in favor of plaintiff for the five-sixteenths interest in the property and decreed that a special commissioner, appointed for that purpose, convey such interest to her. From that decree defendant appeals.

The main defense relied on in this court is the statute of limitations.

From the record it appears that plaintiff is the widow of defendant's deceased brother; her husband, a railroad employee, was killed in the service in 1907. At that time they lived in Hinton, West Virginia. She had two children. Sometime between 1907 and 1914 they moved to Raleigh, North Carolina. Defendant is also a railroad trainman, employed by the Chesapeake and Ohio Railroad Company, his run being between Huntington and Hinton. In 1914 he lived at Huntington, and was then, and so far as the record discloses, is now, unmarried. He was interested in the welfare of his deceased brother's family, and up to 1914 doubtless contributed to their support. He was in frequent correspondence with the plaintiff, and in July of that year visited them in Raleigh, and while there it was proposed by the one or the other, but by which one is not clear nor material, that they buy property in Huntington, and that the plaintiff and her children should come to Huntington and make their home with defendant. Plaintiff then had $1800 or $1900, and defendant about $2200; it was proposed that she contribute towards the purchase $1000, and he was to furnish the balance. At this time they did not know definitely what property would be purchased nor what it would cost. He returned home and about August 1, 1914, entered into negotiations for the property in question; ascertained its cost; and wrote plaintiff for her $1000. She promptly replied on August 12, sending him a cashier's check for her share. On August 20 he paid the owner $3200 in cash, and got a deed for the property, taking title thereto in his own name. Of the purchase price he paid $2200, and she paid $1000. In

September following, she and her children and the defendant moved into the home. She provided practically all the furniture. They lived there as one family until the fall of 1919. He paid about $20.00 per month for his board; he was away on his run about half the time; he also paid the taxes, water, gas, and light bills in the most part, certain paving assessments and some other small items. He occupied a room in the house which was cared for by plaintiff and her daughter. When they moved into the property, plaintiff's son was about 12 years of age, and her daughter 19. During this period of five years or more the two children materially contributed to the support of the family, the daughter working practically all the time, and the son paying about $30.00 per month for the last two years of the period. In 1918 plaintiff and defendant became estranged, and he quit taking his meals at the home and locked his room so that it could not be taken care of, though he continued to room there. In the fall of 1919 plaintiff's daughter married a young man from Raleigh and went there to live. The mother and brother went with them. Before going, plaintiff claims that she demanded a settlement from defendant, or a conveyance of her interest in the property, but her demand was refused and this suit immediately followed.

A resulting trust is charged in the bill and the circuit court, on the evidence, found in plaintiff's favor. We think it could not do otherwise. Defendant's claim that the $1000 contributed by her was a gift to him is very far-fetched. She was a widow, with two minor children; $1900 at most was the sum total of all her money. She had no other means of support. He was an able-bodied man, had a steady job, at good wages, and at least $2200 in cash. She certainly did not mean to contribute more than half her capital merely to enable him to acquire property in his own name in which she was to have a home for herself and children, just so long and only so long as he might choose. According to this theory of the case, he could have deprived her of her home the week after she moved in, as he claims she had no interest in it, legal or equitable. Neither of them at the time the home was pur-

chased thought of any such arrangement. They may not have thought of the title, how it was to be held; but plaintiff had the right to assume and naturally did assume that her payment of five-sixteenths of the purchase price would give her a like interest in the property. She did not mean her contribution to be a gift to him, nor did he mean to accept it as such. He was no beggar and would not have accepted such a gift from her. He now claims it was a gift, but this is probably because he thinks the benefits she has received from the property amount to more than her contribution. In other words, he claims she has "lived. up" her $1000. He arrives at this by charging her with three-fourths of the rental value of the property and her portion of bills for repairs and improvements, taxes, insurance and other items paid by him during the five years she occupied the house. These bills have no relation to the question at issue. The facts and circumstances clearly show that she made an investment of $1000; her money went into this property and a resulting trust was created in her favor. He holds the title to the property and holds her interest therein as trustee for her. Her share is in proportion to her share in the original purchase price, or five-sixteenths, as decreed by the circuit court.

In this suit she is seeking to enforce this trust. She has an equitable title to five-sixteenths of the property. She asks the court to compel her trustee to convey to her the legal title to her share. Her right could not be enforced at law. It is cognizable only in equity. She is not seeking to collect the $1000 from him,—a mere debt. She would have to pursue a legal remedy to do that, and in that event the statute of limitations might bar. But here she seeks the property, the subject of the trust, not the money which purchased it. In the well considered case of *Patrick* v. *Stark*, 62 W. Va. 602, 59 S. E. 606, it was held that "Enforcement of a resulting trust in land, being a proceeding for the vindication of mere equitable title, not recognized in courts of law, is cognizable in equity only," and that "Statutes of limitations are never applicable to causes of action falling within the exclusive jurisdiction of courts of equity." In that case the suit to

enforce the trust was instituted almost forty years after the trust was created, and yet it was held that the plaintiffs were not barred by the statute of limitations. In such cases, however, the equity rule of laches may be applied, where resort to parole evidence is necessary to establish the trust, and it makes no difference whether the trust be express, implied, resultant or constructive. But in the present case laches has no application. Plaintiff has not been guilty of laches. She lived in the property till October, 1919, and within two months thereafter brought this suit. The rights of no third party have intervened. The interests of the parties remain the same. No evidence has been lost by death or circumstance. There is no equity requiring the application of the doctrine of laches, as insisted by counsel for defendant. There was no delay.

The decree will be affirmed.

*Affirmed.*