JAMES McCLUNG *v.* SEWELL VALLEY RAILROAD COMPANY *et al.*

(No. 6902)

Submitted April 29, 1931. Decided June 9, 1931.
(Rehearing denied July 24, 1931.)

*Fitzpatrick, Brown & Davis* and *Walter L. Brown* for appellants.

*J. S. McWhorter* and *A. M. Belcher* for appellee.

LITZ, PRESIDENT:

This controversy involves the ownership of a railroad right of way as between the landowner and the railroad company.

Thomas A. Hall, the owner in fee simple of approximately 218 acres of land on Big Clear Creek in Greenbrier County, May 27, 1892, executed a writing (in which his wife joined), as follows:

"Article of agreement and contract made and entered into this the 27th day of April, 1892, between Thomas A. Hall and Sarah F. Hall, his wife, of the one part, and J. J. Echols of the second part, all of the County of Greenbrier and State of West Virginia, Witnesseth:

That for and in consideration of Ten Dollars in hand paid by the said Echols to the said Hall, the said Hall, party of the first part, hereby grants to the said Echols the right of way through his lands down Big Clear Creek for a railroad, and it is further understood between the parties that when the said railroad is made the said Echols or his representatives is to pay to the said Hall or his representatives the sum of Forty Dollars per acre for the amount of land that is consumed by said railroad. Said right of way is to be of sufficient width for the purposes thereof but is not to exceed sixty feet in width and is not to run through said Hall's yard, orchard or garden where they now stand.

Witness the following signatures and seals.

                              T. A. HALL (Seal)
                              S. F. HALL (Seal)."

The instrument was acknowledged April 30, 1892, and recorded June 8th, following.

By deed dated July 25, 1906, Hall conveyed the land to the plaintiff, (Dr.) James McClung, "subject to a certain *contract* between T. A. Hall and J. J. Echols for right of way through the lands hereby conveyed, which contract is of record in Greenbrier County Clerk's Office." The deed substitutes the grantee "for the said T. A. Hall as to all moneys, benefits, and advantages, contracted for or reserved to said T. A. Hall under said *contract*"; and provides that

"said moneys shall be paid and said rights benefits and advantages accrue to the said Dr. James McClung."

By deed dated December 31, 1922, J. J. Echols granted to defendant, Leckie Smokeless Coal Company, "all the rights of way, rights, privileges, property and easement conveyed to" him by said Thomas A. Hall and wife.

In 1925, the appellant, Sewell Valley Railroad Company, instituted a proceeding to condemn a strip of land in fee simple through the said land of James McClung and the lands of others for the construction of an additional branch of its railroad along Big Clear Creek in Greenbrier County. Commissioners, appointed in the proceeding, fixed the value of the strip proposed to be taken through the plaintiff's land, sixty feet wide and containing 2.73 acres, as $2,730.00 and damages to the residue at $3,742.00. Leckie Smokeless Coal Company having entered upon the construction of a railroad across said land, claiming under the conveyance to it from J. J. Echols, this suit was instituted against it in the circuit court of Greenbrier County, July 19, 1926, to enjoin it, its agents, representatives and employees from the further prosecution of the work; and to cancel the writing of April 27, 1892, between Thomas A. Hall and wife of the one part and J. J. Echols of the other part, and the conveyance from J. J. Echols to Leckie Smokeless Coal Company, upon the ground that the first named instrument constituted a mere contract or offer of sale which by lapse of time had become unenforceable. A temporary injunction, granted September 3, 1926, was, upon motion of the defendant, Leckie Smokeless Coal Company, after the filing of its demurrer and answer dissolved December 9th, following. An appeal from the ruling of the circuit court having been refused by this Court, Leckie Smokeless Coal Company, by deed dated June 7, 1927, conveyed to Sewell Valley Railroad Company the rights conveyed to it by J. J. Echols, as aforesaid. Thereupon, on motion of the Sewell Valley Railroad Company, the condemnation suit was dismissed without prejudice. By writing of June 30, 1927, the Sewell Valley Railroad Company leased its property to appellant, Chesapeake & Ohio Railway Company. At September Rules, 1927, plaintiff filed an amended and supplemental bill, making the Sewell

Valley Railroad Company and the Chesapeake & Ohio Railway Company parties defendant, and praying, in addition to the prayer of the original bill, the cancellation of the deed from Leckie Smokeless Coal Company to Sewell Valley Railroad Company, and the lease from the latter to Chesapeake & Ohio Railway Company, and an injunction, enjoining the Sewell Valley Railroad Company and Chesapeake & Ohio Railway Company, their agents, representatives and employees from further entering upon plaintiff's said land for the purpose of constructing, maintaining or operating a railroad thereover.

The cause having been referred to the judge of the thirteenth circuit, at June Rules, 1928, the Sewell Valley Railroad Company and Chesapeake & Ohio Railway Company severally demurred, and filed their separate answers, adopting the answer of the Leckie Smokeless Coal Company to the original bill, denying all of the material allegations of the amended and supplemental bill, and pleading the dissolution of the temporary injunction as *res judicata* of the merits of the controversy.

A final decree was entered March 28, 1930, cancelling the muniments of title, under which the defendants claim the right of way in question, and enjoining them, their agents and employees, from further entering upon the land of the plaintiff for the purpose of constructing, maintaining or operating a railroad thereover, "unless and until the right so to do shall be hereafter obtained under the laws of West Virginia pertaining to eminent domain, or by other legal methods." From this decree defendants, Sewell Valley Railroad Company and Chesapeake & Ohio Railway Company, appealed, assigning error to the rulings of the circuit court (1) in rejecting the plea of *rcs judicata;* (2) in holding that the writing of April 27, 1892, was an offer to sell within a reasonable time which had long since expired, and (3) in enjoining the operation of a public service railroad, without giving the carrier an opportunity to acquire the right of way by legal proceedings.

The order dissolving the temporary injunction did not dismiss the bill, although entered during a regular term of court. The dissolution of a temporary injunction presumptively

does not affect the merits of the case. *Roller* v. *Murray,* 71 W. Va. 161. There is certainly nothing in this case to overcome such presumption. The case of *Gallaher* v. *City of Moundsville,* 34 W. Va. 730, relied on by appellants, is without application. In that case, an injunction was sought restraining the collection of taxes levied to pay the interest on municipal bonds upon the ground that the ordinance "for the issue of the bonds" was void. Part of the plaintiffs had previously instituted a suit to enjoin the issue of the bonds on the same ground, in which a temporary injunction was awarded and dissolved, without further prosecution. Point two of the syllabus in the case states: "Where a bill seeks an injunction against the issue and sale of municipal bonds, because of alleged invalidity of the ordinance authorizing the issue and of the bonds themselves, under the law, and asks no other relief, and such injunction is dissolved *on the merits,* the order of dissolution will, as regards identity of the subject-matter, bar a subsequent bill seeking an injunction against the collection of taxes levied to pay interest on such bonds, so long as the order of dissolution is unreversed." The case of *Diehl* v. *Marchant,* 87 W. Va. 447, 12 S. E. 803, also relied on, is a similar case in which an injunction was sought to enjoin the execution of a writ of possession in an unlawful detainer action. It is true that the sole question in this case is the interpretation of the writing of April 27, 1892, yet it was largely a matter within the discretion of the circuit court to dissolve or retain the temporary injunction pending a determination upon final submission.

Shall the writing in question be construed as a completed grant according to the contention of the defendants, or a contract or offer of sale as plaintiff insists? It has some of the elements of each sort of instrument. In the caption it is denominated an "Article of agreement and contract"; but in the body, the technical term, "grants," is employed. The recited consideration of ten dollars is no part of the purchase price of the right of way, as it is thereafter stated "that when the railroad is made the said Echols or his representatives is to pay the said Hall or his representatives the sum of Forty Dollars per acre for the amount of land that is con-

sumed by the said railroad." Neither the area of the right of way nor, therefore, the amount of the consideration to be paid therefor, is possible of ascertainment. In this connection, the writing states: "Said right of way is to be of sufficient width for the purposes thereof but it is not to exceed sixty feet in width, it is not to run through said Hall's yard, orchard or garden where they now stand."

A fair test of whether a writing involving the purchase of real estate, is a contract of sale or conveyance is whether or not the instrument contemplates further assurance of title. Words of present grant or present assurance, such as "have granted, bargained, sold, aliened, enfeoffed, released and confirmed" or words of like import, afford a presumption that an executed conveyance was intended and that the title passed. But the presumption is not conclusive. Instruments containing these words are to be construed and interpreted the same as other instruments, and the presumption arising from the words themselves may be overcome by the presence in the instrument of other words which contemplate a future conveyance. *Williams* v. *Payne*, 169 U. S. 55. "In determining the intention the first rule is to inquire whether the language imports a present conveyance, or whether, collecting all its parts, it contemplated a further assurance to pass the title." 8. R. C. L. 929. "It is a rule of construction that, though a deed may in one part use the formal and apt words of a conveyance, yet if, from other parts of the instrument taken and compared together, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail; for the intent, and not the words, is the essence of every agreement." *Mineral Development Co.* v. *James*, 97 Va. 403, 34 S. E. 37. In view of the several elements, hereinbefore recited, indicating further assurance of title, we are of opinion that the instrument under consideration should be construed as a contract or offer of sale imposing the obligation upon the offeree of acceptance within a reasonable time; and, further, that such reasonable time had expired before the institution of this suit. Counsel for defendants rely upon the case of *Des Moines County Agricultural Society* v. *Tubbesing*, (Iowa) 54 N. W. 68, involving a

writing as follows: "This agreement, made this 5th day of September, 1884, between Wm. Tubbesing, party of the first part, and the Des Moines County Agricultural Society, party of the second part, Witnesseth, that in consideration of the right of way granted by Wm. Tubbesing, party of the first part, to the Des Moines Agricultural Society, party of the second part, for the purpose of building a railroad track connecting the Des Moines County fair grounds with the main track of the C. B. & Q. Railroad, (defining the location of the right of way) that said Society hereafter promises and agrees to pay said Wm. Tubbesing the sum of two hundred dollars per year for the term of five years, the first payment to be made on or before the day on which the first train passes over said right of way." The right of way was promptly appropriated and the consideration paid in accordance with the terms of the instrument. The question involved in the case thereafter instituted was whether or not the agricultural society was entitled to a permanent right of way or merely a lease thereof for five years, and it was held that a conveyance of a permanent right of way was intended. As the instrument fixed the amount of the consideration and defined the right of way, no further assurance of title was necessary.

Concerning the remaining question, we are of opinion that the decree, complained of, should be construed as enjoining the defendants from operating the railroad until one of the railway companies in good faith institutes condemnation proceedings to condemn the right of way or acquire the same by other legal methods. "If possible, that construction will be adopted which will support the judgment, rather than one which will destroy it." 34 C. J. 502. Assuming, however, that a proper interpretation of the decree would render it erroneous, in the particular phase, it should be modified in this respect and affirmed.

*Modified and affirmed.*