WOODROW W. ANNON

*v.*

DAVID F. LUCAS, *Sheriff, etc., et al.*

(No. 12980)

Submitted September 21, 1971.  Decided November 9, 1971.

Dissenting Opinion December 6, 1971.

*Steptoe & Johnson, Ernest C. Swiger, Patrick D. Deem,* for appellant.

*Herschel Rose, Dominick J. Romino, Roderick A. Devison,* for appellees.

HAYMOND, JUDGE:

This is a civil action instituted in the Circuit Court of Taylor County, April 22, 1967, in which the plaintiff, Woodrow W. Annon, seeks a recovery from the defendants, David F. Lucas, Sheriff of Taylor County, West Virginia, administrator de bonis non, cum testamento annexo of the estate of James M. Annon, deceased, and Silas Kirk, executor of the estate of Walter H. Annon, deceased, for breach of a written agreement dated May 13, 1949 for the sale and conveyance to the plaintiff by James M. Annon of a certain farm of 131-½ acres owned by him in Bethlehem Township, Coshocton County, Ohio, in consideration of the promise of the plaintiff to furnish to James M. Annon a home and the necessaries of life from March 31, 1949 until the death of James M. Annon which occurred November 30, 1965; to cancel and set aside the will of James M. Annon; and to impress a constructive trust upon the proceeds of sale of the 131-½ acre farm made by James M. Annon to an unnamed third party, October 27, 1952 which, less some expenditures of unnamed amounts, were at the time of the institution of this action in an account in a bank in Coshocton, Ohio, in the name of Walter H. Annon personally as assets to be administered by the defendant Kirk, as Executor of the estate of Walter H. Annon.

The plaintiff filed an original complaint, an amended complaint and a second amended complaint. The defendant, David F. Lucas, Sheriff, administrator de bonis non, cum testamento annexo of the estate of James M. Annon, has made no appearance and offered no defense in the action, but the defendants, Silas Kirk, executor of the estate of Walter H. Annon, and Gladys Stanley, sometimes referred to as the defendants, filed separate answers to the second amended complaint and in each answer moved to dismiss the action for failure to state a claim upon which relief can be granted in this action.

Upon the foregoing pleadings, the circuit court sustained the motion to dismiss and by final judgment rendered September 15, 1969, dismissed the action at the cost of the

plaintiff on the stated grounds that the plaintiff had an adequate remedy at law and that the claim of the plaintiff was barred by laches. Upon the application of the plaintiff this Court granted this appeal July 6, 1970, and on September 21, 1971, the case was submitted for decision upon the record, the printed briefs, and the oral arguments of the attorney for the plaintiff and the attorneys for the defendants, Silas Kirk, executor of the estate of Walter H. Annon, and Gladys Stanley.

The second amended complaint alleges, and the answers of the last named defendants admit, these facts. The plaintiff is the son of Walter H. Annon, deceased. On October 27, 1952, James M. Annon sold to a person other than the plaintiff the 131-½ acre farm in Bethlehem Township, Coshocton County, Ohio, and collected from the purchaser the money paid for the farm. By his will, dated April 14, 1950 and admitted to probate January 14, 1966 in the County Court of Taylor County, West Virginia, James M. Annon bequeathed and devised his property to Walter H. Annon and his wife, Irene H. Annon. Irene H. Annon died intestate leaving surviving her Gladys Stanley, her daughter and only heir and distributee. Walter H. Annon qualified as the executor of the estate of James M. Annon on January 19, 1966, and as executor paid funeral bills, medical bills, taxes and other debts of James M. Annon. On April 19, 1967, Walter H. Annon died and Silas Kirk was duly appointed Executor of his estate. On June 26, 1969, David F. Lucas, Sheriff of Taylor County, was appointed administrator de bonis non, cum testamento annexo of the estate of James M. Annon in the place and stead of Walter H. Annon as executor of the estate of James M. Annon.

It also appears from the allegations of the second amended complaint, which on motion to dismiss, as on demurrer, are taken to be true not only as to the facts expressly stated but also as to all facts that can be implied from those alleged by reasonable or fair intendment, that the plaintiff entered into a written agreement with James M. Annon dated May 13, 1949, at Coshocton, Ohio, by which

James M. Annon, in consideration that the plaintiff furnish to James M. Annon a home and the necessaries of life required by him for the remainder of his life, agreed and did sell, transfer and convey unto the plaintiff a certain farm of 131-½ acres, owned by James M. Annon, situate in Bethlehem Township, Coshocton County, Ohio, together with all the stock and equipment on the farm, and that the plaintiff performed the promises set forth in the agreement and furnished to James M. Annon a home and the necessaries of life from March 13, 1949 until the death of James M. Annon which occurred November 30, 1965.

It further appears from the allegations of the second amended complaint that on October 27, 1952, James M. Annon sold and conveyed the 131-½ acre farm to a third party and collected the purchase money for the farm and deposited the money in a savings account in the Coshocton National Bank and expended a part of the money during his lifetime; that Walter H. Annon, as executor of the estate of James M. Annon, transferred the purchase money into another account in that bank in his name as the executor of the estate of James M. Annon, and as executor, paid the funeral bills, medical bills and taxes, and other debts of James M. Annon from the money so deposited and subsequently transferred the money in that bank to his personal account. Before final settlement of the estate of James M. Annon, Walter H. Annon died April 19, 1967, and Silas Kirk was appointed executor of the estate of Walter H. Annon, and has received, or will receive, the money deposited in the Coshocton National Bank as an asset of the estate of Walter H. Annon.

The agreement upon which the plaintiff relies and for the breach of which by James M. Annon, in conveying the 131-½ acre farm to a person other than the plaintiff and failing and refusing to vest the plaintiff with the ownership and possession of the farm at or before his death, the plaintiff seeks to impress a trust upon the proceeds of the sale of the farm in the possession of Silas Kirk, executor of the estate of Walter H. Annon, deceased, is expressed in these words:

"This agreement entered into this thirteenth day of May, 1949 at Coshocton, Ohio by and between J. M. ANNON, Party of the First Part and WOODROW W. ANNON, Party of the Second Part;

"WITNESSETH:

"That, for and in consideration of the said Woodrow W. Annon furnishing to J. M. Annon a home and the necessaries of life required by him for the remainder of his life, the said J. M. Annon agrees and does hereby sell, transfer and convey unto the said Woodrow W. Annon all his right, title and interest in and to his farm of 131-½ Acres, situated in Bethlehem Township, Coshocton County, Ohio, together with all stock and equipment thereon. The said Woodrow W. Annon shall have the entire income from said farm, and all expenses of operation, taxes and up-keep shall be borne by the said Woodrow W. Annon.

"Said Woodrow W. Annon for himself, his heirs and assigns, hereby agrees, that for and in consideration of the transfer and conveyance of said farm and equipment herein set forth to him by the said J. M. Annon, to furnish to said J. M. Annon for and during the remainder of his life a home and the necessaries of life and will assume all obligations for the operation, taxes and upkeep of said farm.

"It is understood and agreed by and between the Parties hereto that this Contract shall be binding upon the heirs, executors and assigns of both parties.

"Further, that this Agreement was orally entered into on the 31st day of March, 1949, but not reduced to writing, and that this Contract shall be considered as effective and in force as of the 31st day of March, 1949.

"IN WITNESS WHEREOF, said Parties have hereunto set their hands to duplicates the day and year first above written.

"J. M. ANNON—Party of the First Part

"WOODROW W. ANNON—Party of the Second Part"

Though the agreement was acknowledged by J. M. Annon and the plaintiff it does not appear that it was admitted to record in the proper office of Coshocton County, Ohio for if it had been so recorded the purchaser of the farm from James M. Annon on October 27, 1952, who was presumably a purchaser for value and without notice of the foregoing agreement, could not have withheld the farm from the ownership and possession of the plaintiff, as he evidently did, except by adverse possession for the statutory period of limitations. Furthermore if the third party purchaser was not a bona fide purchaser and the agreement of May 13, 1949 was an outright deed, instead of an agreement of sale, the institution of this action by the plaintiff would not have been necessary and inasmuch as he has instituted this action for the relief which he seeks the defendants could and doubtless would have asserted as a complete defense the lack of ownership of the third party purchaser and the ownership and enjoyment of the farm by the plaintiff which, of course, they have not done and can not do.

In support of his claim the plaintiff contends that though the agreement was violated or repudiated by James M. Annon when he conveyed the farm to a third party, October 27, 1952, and the plaintiff could have sued at that time, he was not required to do so until the death of James M. Annon; that the statute of limitations and laches did not begin to run until that time, and that under the written agreement he is entitled to impress a constructive trust upon the proceeds of sale in the hands of the executor of the estate of Walter H. Annon, who holds them as trustee for the benefit of the plaintiff.

On the contrary, the defendants contend that the second amended complaint does not state a claim for relief in equity because the plaintiff has an adequate remedy at law; that his cause of action accrued when James M. Annon sold the farm to a third party; and that his claim is barred by the statute of limitations and by laches which began to run at that time. The defendants do not assert in their brief or oral argument that James M. Annon complied with or performed his agreement but instead they

admit in their brief in this Court that in conveying the farm to a third party James M. Annon "disabled himself from performing the contract on his part" and that "this constituted a present breach of the contract on the part of James M. Annon for which the plaintiff had an action immediately." Accordingly the defendants though formally denying in their answers the allegations of the second amended complaint rely mainly on the technical defenses of an adequate remedy at law and the statute of limitations and laches as a bar to the action.

The question has arisen as to whether the agreement of May 13, 1949, between the plaintiff and James M. Annon, is a contract for the sale of the 131-½ acre farm which conferred equitable title upon the plaintiff, or a deed which vested the legal title in him. Though in the brief in behalf of the defendants and in the oral argument in their behalf, the writing is referred to as a deed, it is reasonably clear from the record that the plaintiff and James M. Annon regarded it as a contract of sale. The plaintiff so regarded it and it is unreasonable to conclude that James M. Annon would have conveyed the property as he did to a third party if he had regarded the agreement of May 13 as a deed, or that he regarded the conveyance to a third party as a second deed for the property. The only factor that gives any indication that it is a deed is the use of the word "transfer" and the word "convey". All the other provisions of the writing indicate strongly that it is not a deed but an executory contract of sale. The instrument is identified by its terms as an agreement, not a deed, and the writing states that the agreement was orally entered into March 31, 1949 but was not reduced to writing and that the contract would be considered as effective and in force as of that date. Clearly an oral contract could not and does not constitute a deed. Moreover, it is signed by both parties instead of by the grantor only, and generally only the grantor signs a deed unless it is an inter partes deed. In any event, the words "transfer" and "convey" create a conflict and an ambiguity as to whether the parties intended it to be an agreement of sale or a deed and the meaning and interpretation given it by the parties

are entitled to weight in determining the character of the instrument. In 17 AM. JUR. 2d, *Contracts*, Section 274, the text supported by decisions in many jurisdictions is couched in this language: "In the determination of the meaning of an indefinite or ambiguous contract, the construction placed upon the contract by the parties themselves is to be considered by the court. Unquestionably, the practical construction or uniform conduct or practice of the parties under a contract is a consideration of much importance in ascertaining its meaning, and that consideration is entitled to great, if not controlling, influence in ascertaining the parties' understanding of the contract terms and language, since the parties are in the best position to know what was intended by the language employed." See also *Fredeking* v. *Grimmett*, 140 W.Va. 745, 86 S.E.2d 554, 50 A.L.R.2d 1346; *Litz* v. *First Huntington National Bank*, 120 W.Va. 281, 197 S.E. 746.

In the *Fredeking* case this Court said in Point 1 of the syllabus that "When a contract is ambiguous and of doubtful and uncertain meaning, and the parties have by their contemporaneous or subsequent conduct placed a construction upon it which is reasonable, that construction will be adopted by the court." In the *Litz* case, Point 2 of the syllabus states that "The practical interpretation placed upon an indefinite or ambiguous contract by the parties thereto is entitled to great, if not controlling, weight."

In *McClung* v. *Sewell Valley Railroad Company*, 110 W.Va. 621, 159 S.E. 521, a written agreement, the caption of which contained the statement "Article of agreement and contract" but which also used the technical term "grants" and other assurances of title in the body of the instrument, was held to be not a deed but a contract or offer of sale. In the opinion in that case this Court said: "A fair test of whether a writing involving the purchase of real estate, is a contract of sale or conveyance is whether or not the instrument contemplates further assurance of title. Words of present grant or present assurance, such as 'have granted, bargained, sold, aliened, enfeoffed,

released and confirmed' or words of like import, afford a presumption that an executed conveyance was intended and that the title passed. But the presumption is not conclusive. Instruments containing these words are to be construed and interpreted the same as other instruments, and the presumption arising from the words themselves may be overcome by the presence in the instrument of other words which contemplate a future conveyance. *Williams v. Payne,* 169 U.S. 55. 'In determining the intention the first rule is to inquire whether the language imports a present conveyance, or whether, collecting all its parts, it contemplated a further assurance to pass the title.' 8. R.C.L. 929. 'It is a rule of construction that, though a deed may in one part use the formal and apt words of a conveyance, yet if, from other parts of the instrument taken and compared together, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail; for the intent, and not the words, is the essence of every agreement.' *Mineral Development Co. v. James,* 97 Va. 403, 34 S.E. 37. In view of the several elements, hereinbefore recited, indicating further assurance of title, we are of opinion that the instrument under consideration should be construed as a contract or offer of sale imposing the obligation upon the offeree of acceptance within a reasonable time; * * *.''

In view of the language of the agreement in its entirety, despite the word "transfer" and the word "convey", and of the conduct of the parties from the time of the execution of the agreement until the death of James M. Annon, it is the opinion of this Court that the agreement is not a deed but is an executory agreement for the sale and conveyance of the farm in consideration of the home and the necessaries to be furnished by the plaintiff during the remainder of the life of James M. Annon. But even if the written instrument should be regarded as a deed there is no proof that it was ever delivered and it is manifest that the plaintiff was never vested with the ownership, use and possession of the farm as contemplated by the agreement and that James M. Annon had failed and refused to perform his obligation under it at the time of his death.

Furthermore, if the instrument should be considered as a deed it was ineffective and did not vest the plaintiff with the ownership, use and enjoyment of the farm to which he was entitled by the agreement at the time of the death of James M. Annon.

Though the conveyance of the farm by James M. Annon on October 27, 1952, constituted an anticipatory breach or repudiation or renunciation of the agreement which entitled the plaintiff to sue for damages for breach of the agreement, under the doctrine of anticipatory breach he was not required to do so until the occurrence of the time of performance by James M. Annon which was the time of his death, as the plaintiff, to satisfy the stated consideration, was obligated to furnish the home and the necessaries mentioned in the agreement until the death of James M. Annon which did not occur until November 30, 1965. "An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future." 17 AM. JUR. 2d, *Contracts,* Section 448.

It is well established by decisions in many jurisdictions that the "renunciation or repudiation of a contract before the time for performance, which amounts to a refusal to perform it at any time, gives the adverse party the option to treat the entire contract as broken and to sue immediately for damages as for a total breach. * * *. If the injured party does not wish to bring such an immediate suit for damages, he may elect between two other alternatives— that is, (1) to treat the contract as still binding and wait until the time arrives for its performance by the promisor, and at such time to bring an action on the contract, or (2) to rescind the contract and sue for money paid or the value of services or property furnished." 17 AM. JUR. 2d, *Contracts,* Section 449.

This Court has recognized and applied the doctrine of anticipatory breach which stems from the decision in the famous English case of *Hochster* v. *De La Tour,* decided in 1853, 22 L.J.Q.B. 455, 2 El. & Bl. 678, 118 Eng Reprint

922, 6 Eng. Rul. Cas. 576, 17 Jur. 972. *Atlantic Bitulithic Company* v. *Town of Edgewood,* 103 W.Va. 137, 137 S.E. 223; *Bare* v. *Victoria Coal & Coke Co.,* 73 W.Va. 632, 80 S.E. 941; *Miller* v. *Jones,* 68 W.Va. 526, 71 S.E. 248; *Pancake* v. *George Campbell Co.,* 44 W.Va. 82, 28 S.E. 719; *Davis* v. *Grand Rapids School-Furniture Company,* 41 W.Va. 717, 24 S.E. 630; *James* v. *Adams,* 16 W.Va. 245.

In the *Atlantic Bitulithic Company* case the opinion contains this statement which is almost identical with Point 2 of the syllabus in *Bare* v. *Victoria Coal & Coke Co.,* 73 W.Va. 632, 80 S.E. 941: " 'The general rule in such cases is that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies. He may treat the contract as rescinded, and recover on quantum meruit so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized, if he had not been prevented from performing. In the latter case, the contract would be continued in force for that purpose.' " The opinion also states that "There is no breach so long as the injured party elects to treat the contract as continuing, *Zuck & Henry v. McClure & Co.,* 98 Pa. St. 541."

The rule as to when the statute of limitations begins to run in case of an anticipatory breach of a contract as stated in Section 322, Restatement of the Law of Contracts, is that " 'If no action on an anticipatory breach is brought before the time fixed by the contract for the beginning of performance by the party who has committed such a breach, the period of the Statute of Limitations begins to run only from the time so fixed by the contract.' " The well established general rule is that where an action is brought after the time fixed by an executory contract for the beginning of performance by a party who has committed an anticipa-

tory breach, the period of limitations runs not from the time of such breach but from the time fixed for performance by the defaulting party. 94 A.L.R. Anno. 1, Page 456. One reason for an election by the injured party whether he will regard an anticipatory repudiation as final is that his failure to regard such repudiation as final is advantageous to the wrongdoer who is given an enlarged opportunity of nullifying the effect of his repudiation and is not prejudiced by the postponement of the operation of the statute of limitations until the time of the performance required of the wrongdoer by the agreement.

In *Colby* v. *Street,* 146 Minn. 290, 178 N.W. 599, in which the plaintiff entered into a contract with her widowed sister to terminate her employment and to go to live with the sister, who agreed to devise her homestead to the plaintiff, the court held that the plaintiff's cause of action to enforce the agreement accrued at the date of her sister's death and that it was not barred by the statute of limitations by reason of the conveyance by the sister of the plaintiff of her homestead to a stranger more than six years before her death.

Under an agreement which provides that if the promisee will live with and work for the promisor during his lifetime the promisor will compensate the promisee at the time of the promisor's death, neither the statute of limitations nor laches begins to run until the time of the death of the promisor and not from the time the agreement was repudiated by the promisor, if the promisee did not elect to treat such repudiation as putting an end to the agreement and held himself in readiness to perform on his part and after the death of the promisor promptly made claim against his estate and began and prosecuted an action upon the agreement with all due diligence. *Gold* v. *Killeen,* 44 Ariz. 29, 33 P.2d 595, 94 A.L.R. 448.

Here it is clear that as the plaintiff elected, which he had a right to do, to keep the agreement alive and to perform his obligations under the agreement until the death of James M. Annon and then to sue and recover under the

agreement, the final breach of the agreement did not occur until the death of James M. Annon, the cause of action of the plaintiff under the agreement did not accrue until that event, and the statute of limitation and laches did not begin to run until that time.

As previously indicated, this action was instituted April 22, 1967, which was less than one year and six months after the death of James M. Annon November 30, 1965, and only three days after the death of Walter H. Annon April 19, 1967. The statutory limitation of ten years as to an action upon a contract in writing imposed by Section 6, Article 2, Chapter 55, Code, 1931, or of fifteen years upon a contract in writing imposed by Section 2305.06, Title 23, Ohio Revised Code, does not apply to or bar this action; and neither does the equitable doctrine of laches.

If the farm had been owned by James M. Annon at the time of his death, because of the equitable title of the plaintiff in and to it by virtue of the agreement, the successors in title of James M. Annon under the constructive trust doctrine would have held the property in trust for the benefit of the plaintiff. Instead of the land, the proceeds derived from its sale and conveyance to a third party in the possession and control of James M. Annon were subject to a constructive trust in favor of the plaintiff. These proceeds of the sale passed by will to Walter H. Annon and his wife Irene H. Annon and at the time of the institution of this action were in a bank account in the name of Walter H. Annon and came into the hands and possession of his executor, the defendant Kirk, to be administered. As Walter H. Annon and the beneficiaries of his estate were not purchasers for value without notice they succeeded only to the right and interest of James M. Annon in the proceeds of sale and such proceeds were likewise impressed with and were subject to a constructive trust in favor of the plaintiff.

In 19 M.J., *Trusts and Trustees,* Section 48, the text contains this language: "In general, whenever the legal title to property, real or personal, has been obtained

through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein. A court of equity has jurisdiction to reach the property, either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust." A wrongful taking of property of another, followed by its conversion into another or different form, whether by a fiduciary or by one who is not a fiduciary, is ground for the declaration and the enforcement of a constructive trust with respect to the new form or species, at the election of the beneficiary, so long as the property or its product or proceeds can be traced and identified, and has not come into the hands of a purchaser for value and in good faith. 54 Am. Jur., *Trusts*, Section 245.

A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where, although acquired originally without fraud, it is against equity that it should be retained by the person holding it. The availability of a constructive trust as a mode of relief against unjust enrichment is not, in general, affected by the fact that the plaintiff has a cause of action at law, as distinguished from equity, for damages or other relief. 54 Am. Jur., *Trusts*, Section 219. Generally, any transaction may be the basis for creating a constructive trust where for any reason the defendant holds funds which in equity and good conscience should be possessed by the plaintiff. 89 C.J.S., *Trusts*, Section 142.

Under the well established trust pursuit rule, a trust will follow property through all changes in its state and form,

so long as such property, its product, or its proceeds are capable of identification. It will follow the property into the hands of a transferee other than a bona fide purchaser for value, or restitution will be enforced at the election of a beneficiary, through recourse against the trustee or the transferee personally, or through compelling the transferee to perform the trust, except insofar as the transferee is protected as a bona fide purchaser for value. 54 AM. JUR., *Trusts,* Section 248.

In the above cited case of *Colby* v. *Street,* 146 Minn. 290, 178 N.W. 599, the facts in which are somewhat similar to the facts in the case at bar, the court held that when the vendor in a contract for the sale of land conveys it to one who purchases without notice of the vendee's rights, the vendee is not limited to an action for damages against the vendor but may treat the proceeds of sale, so long as they are in the hands of the vendor or his personal representative and can be traced and identified, as substituted for the land described in the contract. The opinion in that case contains these statements: "Under an executory contract for the sale of land the title in equity is vested in the vendee, * * * the legal title remaining in the vendor as security for the purchase price, and then in trust for the vendee. * * *. The heirs and devisees of the vendor do not occupy the position of bona fide purchasers. * * *."

A constructive trust can be enforced only in a court of equity. See *Strickler* v. *Strickler,* 92 W.Va. 183, 114 S.E. 524. The jurisdiction of equity courts to enforce performance of trusts arises where property has been conferred upon and accepted by one person on terms of using it for the benefit of another person. *Charlton* v. *Chevrolet Motor Company,* 115 W.Va. 25, 174 S.E. 570. Enforcement of a constructive trust in land, being a proceeding for the vindication of mere equitable title, not recognized in courts of law, is cognizable in equity only. *Patrick* v. *Stark,* 62 W.Va. 602, 59 S.E. 606. In *Williams* v. *McCarty,* 82 W.Va. 158, 95 S.E. 638, 100 S.E. 565, 15 A.L.R. 9, this Court held in Point 1 of the syllabus that "A party whose property has been appropriated by another may in equity follow and

secure such property, either in its original or in any changed or different form, and this right to so follow and secure it extends to the property either in its original or any altered form in the hands of a third party, where it appears that such third party took it with notice of the fact that it had been improperly appropriated." *Carleton Mining & Power Company* v. *West Virginia Northern Railroad company,* 113 W.Va. 20, 166 S.E. 536, *certiorari denied,* 289 U.S. 734, 53 S. Ct. 594, 77 L. Ed. 1482. See also *Kersey* v. *Kersey,* 76 W.Va. 70, 85 S.E. 22. In *State* v. *Phoenix Mutual Life Insurance Company,* 114 W.Va. 109, 170 S.E. 909, 91 A.L.R. 1482, this Court said in Point 2 of the syllabus that "It is a fundamental rule of the common law that no man shall be permitted to profit by his own wrong, and it is a settled expedient of equity to impress a constructive trust on whoever acquires property rights by the commission of a wrong to hold the same as a trustee for the one equitably entitled thereto." This Court also held in Points 1 and 2 of the syllabus in *Carleton Mining & Power Company* v. *West Virginia Northern Railroad Company,* 113 W.Va. 20, 166 S.E. 536, *certiorari denied,* 289 U.S. 734, 53 S. Ct. 594, 77 L. Ed. 1482, that "Where a person appropriates or improperly employs for his own use the property of another, he may be dealt with as a trustee for such other. A constructive trust is imposed by equity as a means of effecting an equitable adjustment.", and that "A constructive trust arises not from agreement of parties, express or implied, but from the construction and operation of equity in order to satisfy the demands of justice."

Under the foregoing authorities the proceeds of the sale of the farm in the hands of the defendant Kirk, executor of the estate of Walter H. Annon, deceased, or in the hands of the beneficiaries under the will of James M. Annon, deceased, or their successors in title, are impressed with and are subject to a constructive trust in favor of the plaintiff, such proceeds are held by such parties or any of them as a trustee for the benefit of the plaintiff, and such trust may and will be enforced in an action for that purpose. Such action instituted within one year and six

months of the death of James M. Annon and within three days of the death of the executor of his estate, Walter H. Annon, is not barred by laches which did not begin to run until the plaintiff's cause of action accrued at the death of James M. Annon.

The judgment of the Circuit Court of Taylor County is reversed and set aside and this case is remanded to that court for such further proceedings as may be proper in conformity to the principles enunciated in this opinion.

*Reversed and remanded*
*with directions.*

CARRIGAN, JUDGE, dissenting:

I dissent from the majority opinion in this case.

The record discloses the following chronological facts in this case:

First: By a written instrument, dated May 13, 1949, plaintiff's uncle, J. M. Annon, "agrees and does hereby sell, transfer and convey unto" plaintiff a farm of 131½ acres in the State of Ohio together with all stock and equipment thereon, the plaintiff to receive the entire income from said farm and to pay all expenses of operation, taxes and upkeep. The consideration for this conveyance and transfer was that plaintiff would provide his uncle, J. M. Annon, for the remainder of his life "a home and the necessaries of life and will assume all obligations for the operation, taxes and upkeep of said farm."

Second: On or about April 14, 1950, J. M. Annon executed a will leaving his estate to Walter H. Annon and Irene H. Annon, the plaintiff's father and stepmother.

Third: On or about October 27, 1952, J. M. Annon conveyed the 131½-acre farm in Ohio to a third party and received over $20,000, which he deposited in a bank in the State of Ohio.

Fourth: J. M. Annon died November 30, 1965, some thirteen years and one month after he conveyed the farm to a third party in October 1952.

Fifth: The will of J. M. Annon was probated in Taylor County, West Virginia, in January 1966 and Walter H. Annon, plaintiff's father, qualified as executor thereof on January 19, 1966. The executor proceeded to pay the debts and inheritance taxes due from said estate and apparently was in the act of making a settlement of his account when the executor died on April 19, 1967. The wife of Walter H. Annon, plaintiff's stepmother, predeceased both J. M. Annon and her husband, she having died intestate survived by one child.

Sixth: Plaintiff instituted this suit on April 22, 1967, three days after his father's death, approximately thirteen months after the death of J. M. Annon, and approximately fourteen years and six months after J. M. Annon conveyed the 131½-acre farm to a third party.

A reading of the writing of May 13, 1949, which is fully set forth in the majority opinion, leads me to the conclusion that it is clear and unambiguous and that on that date J. M. Annon conveyed to plaintiff both his legal and equitable title to the 131½-acre farm, and the stock and equipment, and that thereafter plaintiff was to receive the income from the farm and to pay the taxes thereon and the upkeep thereof.

After May 13, 1949, no further action was required of J. M. Annon, or his heirs, to transfer title of said farm and equipment to plaintiff. If plaintiff had recorded the May 13, 1949, writing, he would have paramount title over the third party purchaser from J. M. Annon. Plaintiff acquired a determinable fee in said farm and equipment of which he could be divested only by plaintiff's failure to provide a home for J. M. Annon or to perform the other things required of plaintiff in the May 13, 1949, writing.

Is it reasonable to believe that plaintiff, who was to receive the income from this farm and was to pay the taxes

thereon and upkeep thereof, would sit idly by for fourteen and one-half years without receiving any income from the farm or without paying any taxes thereon or any upkeep and not be said to have had knowledge of J. M. Annon having disposed of the property to a third party? Why did plaintiff wait until both J. M. Annon and plaintiff's father, the brother of J. M. Annon and one of the legatees of his will, had died before starting this action? Is it possible that had this action been started during the lifetime of J. M. Annon or even that of plaintiff's father, their testimony would have defeated the claim of plaintiff?

A reading of the various cases dealing with the doctrine of laches can only lead to the conclusion that in each case courts of equity have "tailored the suit to fit the cloth." The following is quoted from *Pownall* v. *Cearfoss,* 129 W.Va. 487, 506-07, 40 S.E.2d 886, 898 (1946):

> Laches may be said to be such neglect or omission to do what a person should do as warrants the presumption that he has abandoned his claim and declines to assert his right, or such delay as works disadvantage to another. *Blake v. Blake,* 98 W.Va. 346, 128 S.E. 139. Any excuse for delay that takes hold of the conscience of the chancellor, and makes it inequitable to interpose the defense, is sufficient. *Berry v. Wiedman,* 40 W.Va. 36, 20 S.E. 817. It is a well settled general rule in equity that mere lapse of time, unaccompanied by circumstances affording evidence of a presumption that a right has been abandoned, is not considered laches. *Roberts v. Crouse,* 89 W.Va. 15, 108 S.E. 421; *West Virginia Power & Transmission Co. v. Voight,* 91 W.Va. 581, 114 S.E. 138; *Cranmer v. McSwords,* 24 W.Va. 594.

> Laches implies injury to the person pleading it, *brought about by loss of the evidence, the death of some of the parties to the original transaction,* changed situations, or the intervention of the rights of other persons. *Roberts v. Crouse,* 89 W.Va. 15, 108 S.E. 421; *Cranmer v. McSwords,* 24 W.Va. 594. Mere delay or lapse of time alone is not sufficient to bar relief. It must be accompanied by some disadvantage to the opposite party, or by some conduct indicating abandonment of the

claim, the reassertion of which will inure to the benefit of the claimant by reason of changed conditions. *Mitchell v. Cornell*, 88 W.Va. 194, 106 S.E. 866. (Emphasis added.)

It appears that plaintiff knew, or should have known, shortly after 1952 that his uncle had sold the 131½-acre farm to another, since plaintiff received no income nor did he pay taxes or upkeep thereon. Possessing such knowledge plaintiff waited until both J. M. Annon and Walter H. Annon died so that their testimony would not be available. Further, plaintiff in his original, first amended and second amended complaint offers no reason or excuse for the long delay in bringing this action. Long delay in asserting a right would raise a presumption of abandonment or acquiescence, and would require an averment excusing the delay or rebutting the presumption of abandonment or acquiescence. *Hale* v. *Hale*, 62 W.Va. 609, 59 S.E. 1056 (1907). "Leges vigilantibus non dormientibus factae sunt." *Williams* v. *Harrell*, 43 N.C. 123, 125 (1851).

The passage of some fourteen and one-half years before any action was started, the death of J. M. Annon, an original party to the writing of May 13, 1949, before plaintiff started this action and plaintiff's failure to show any reason or excuse for such delay, leads me to the conclusion that plaintiff had abandoned any claim he might have had under the May 13, 1949, writing or that he acquiesced in the action of J. M. Annon in selling the farm.

For the foregoing reasons, I would hold that plaintiff's claim is barred by laches, and I would affirm the ruling of the trial court.