# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## WILLIAM H. SWEENY V. MARY J. PATTON.

### September 21, 1922.

1. RESCISSION, CANCELLATION AND REFORMATION—*Parties—Suit by Life Tenant Against Remainderman where Life Tenant Furnished all the Consideration for the Conveyance and Remainderman Failed to Fulfill Promises made to Life Tenant—Case at Bar.*—In the instant case, upon consideration of her nephew's verbal promise to abstain from intoxicating liquors, an aunt furnished all the consideration for the purchase of a farm, which was conveyed to the aunt as life tenant, with remainder over to the nephew. The nephew did not observe this verbal promise. The aunt then agreed to erect buildings and improvements on the farm if the nephew would give a written pledge to abstain from intoxicants. This the nephew did and the buildings were erected and improvements made. The nephew, however, continued his dissipated habits.

   *Held:* That the remedy at law being inadequate, equity would sustain a bill praying that the nephew be compelled to transfer his interest in the farm to the aunt.

2. RESCISSION, CANCELLATION AND REFORMATION—*Parties—Suit for Cancellation Brought by one Other than Grantor—Case at Bar.*—The instant case, a suit by an aunt against her nephew asking that the nephew be compelled to convey to the aunt his remainder interest in a farm for the purchase of which the aunt furnished all the consideration upon a promise of the nephew to abstain from intoxicants, is novel, in that the complainant was not the grantor in the conveyance. However, if she had herself been the owner of the land and had executed a deed to the nephew reserving a life estate therein upon the consideration of his abstaining from intoxicants, upon his failure so to do, unquestionably a court of equity would have cancelled the deed because of the inadequacy of any remedy at law and because of the failure of the consideration therefor. And upon principle, the remedy at law being entirely inadequate, there seems to be no reason for denying the relief sought in the instant case.

3. TRUSTS AND TRUSTEES—*Constructive Trust—Property Obtained Through Fraud, Misrepresentations, Concealments, etc.—General Rule.*—In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or

through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.

Appeal from a decree of the Circuit Court of Roanoke county.   Decree for plaintiff.   Defendant appeals.

*Affirmed.*

The opinion states the case.

*Randolph Henry* and *Lawson Worrell*, for the appellant.

*Kime & Kime*, for the appellee.

Prentis, J., delivered the opinion of the court.

[1, 2] The pertinent facts deducible from this record may be thus stated: Mary J. Patton, the appellee, hereafter sometimes called the complainant, is the aunt of William H. Sweeny, the appellant, hereafter called the defendant.   When the defendant was a child four years of age and an orphan, his aunt and her husband brought him from Canada and took care of him during his childhood.   After he grew up he went to the far West and stayed for about seventeen years.   A few days prior to the death of complainant's husband, in March, 1911, he returned to his foster parents.   Upon the death of her husband she succeeded to his estate, estimated to be

worth about $6,000.00.   More than two years there-
after, that is, October 18, 1913, the deed from Davis
which gives rise to this litigation was made.   It con-
veyed twelve acres of land, vesting a life estate in the
complainant, with remainder to the defendant, the pre-
cise language of the deed being, "The aforesaid real es-
tate to be taken and held by the parties of the second
part as follows, to-wit: a life estate in and to the afore-
said real estate in the said Mary J. Patton, and at her
death the remainder over to the said William Henry
Sweeny."

.The defendant was a wayward boy, and gave a great
deal of trouble during his childhood and after he was
grown.   He continued his evil habits for several years
after the execution of that deed.   The entire purchase
money for the property, amounting to $1,500, was paid
by the complainant.   The evidence justifies the state-
ment that she only agreed to buy the property upon
the inducement, with the understanding, and upon the
promise of the defendant that he would entirely aban-
don the use of intoxicating liquors, to which he was
addicted; would live with his aunt on the farm, manage
and work the same, and make a living for them both
thereon as best he could.   He did not observe his verbal
promise so far as his intemperate habits were concerned,
and thereafter, only upon the condition that he would
sign a written pledge that he would forever abandon
the use of intoxicating liquors, complainant agreed to
erect on the farm for their joint use a dwelling house
and make other necessary improvements thereon.   This
being assented to, the pledge in writing was executed,
and relying thereon, in the spring of 1914, building and
improvements were put upon the property at an ag-
gregate cost to her of more than $2,000, all of which,
with insignificant exceptions, were paid for by the

complainant. They lived together upon the land until about December, 1915. He continued his dissipated habits whereby he lessened his efficiency and made it impossible for the complainant to live longer with him. He failed to perform his part of the contract, so that almost the entire cost of maintaining the farm and household fell upon the complainant, even to the extent of furnishing him with clothing, until about September, 1918. In that month the defendant having in the meantime married (in August, 1916), and having occupied the farm and used it as his own during the absence of the complainant, he abandoned it and went to Bluefield, West Virginia, where he has since resided. During the period when he and his wife occupied the farm, he paid the taxes for two years. He has not been intemperate since his marriage. Thereupon, in August, 1919, the complainant, then seventy-six years old, filed her bill against the defendant, alleging these facts, substantially, and claiming that by reason of the misconduct of the defendant he had perpetrated upon her a gross fraud by procuring the conveyance of the remainder in said land without performing the agreements and promises which he had made, and that he refused to release and reconvey that remainder to her; that by reason of this conduct a fraud had been perpetrated upon her, and that the consideration upon which she had expended over $4,000 had wholly failed; that to permit the defendant to retain such remainder would be inequitable and fraudulent; and that therefore she is entitled to have it released and conveyed to her.

The suit was matured by order of publication, evidence taken, and on September 10, 1919, a final decree was entered granting the prayer of the bill and appointing a special commissioner to convey the remainder to the complainant. Thereafter, on January 1, 1920, the

defendant filed his petition, alleging that he had not appeared and made defense in the cause because he knew nothing of its pendency, that he had a just and valid defense, asked that the cause might be reopened and reheard, and the decree set aside upon the ground that it had been fraudulently obtained. The cause was then reopened and he was permitted to file his demurrer and answer to the original bill.

It is sufficient to say as to the demurrer that it stated no ground and that no sufficient reason is perceived by this court for sustaining it. The bill appears to be sufficient in law.

The answer denied substantially all of the facts relied upon by the complainant, and made counter charges of fraud and deception. Evidence was then taken upon the issues thus raised. If the defendant had sustained the allegations of his answer, they would have presented a complete defense to the original bill, but he has entirely failed to do so. His testimony in chief, in response to questions propounded by his own counsel, appears to make out his case, but upon cross-examination he substantially admits many of the charges made against him in the bill. In view of the evidence in this case, he can only succeed if, under these circumstances, a court of equity is without jurisdiction to grant any relief. So far as we are informed, the case is novel in its character, in that the complainant is not the grantor in the conveyance, and we know of no precedent for granting such relief, but the equities of the case are perfectly apparent. The whole scheme by which his patient foster mother and considerate aunt undertook to provide for her own immediate comfort by thus expending so large a part of her limited estate, in consideration of the return which she sufficiently proves he promised to make to her, has entirely failed. If she had herself been

the owner of the land and had executed a deed to him reserving a life estate therein upon the considerations hereinbefore stated, unquestionably a court of equity would cancel the deed because of the inadequacy of any remedy at law and because of the failure of the consideration therefor. This is well settled in Virginia. *Lowman* v. *Crawford,* 99 Va. 688, 40 S. E. 17; *Keister* v. *Cubine,* 101 Va. 768, 45 S. E. 285; *Martin* v. *Hall,* 115 Va. 358, 79 S. E. 320; *Tysor* v. *Adams,* 116 Va. 239, 81 S. E. 76, 51 L. R. A. (N. S.) 1197; *Echard* v. *Waggoner,* 126 Va. 238, 101 S. E. 245.

We are unable to perceive, upon principle, any sufficient reason for denying relief here. Certainly the remedy at law for breach of the contract is entirely inadequate. It is impossible to measure in damages the value to her of the services, association and attention which under the contract the defendant owed, and which he has failed to perform. She had it in her power when she supplied the entire consideration for the deed to have the property conveyed to herself, and then to have expressed this contract in a separate conveyance. That she failed to do this does not make her equity any the less appealing.

[3] The principle applicable to such a case appears to be well within the doctrine stated in 3 Pom. Eq. Jur. (4th ed.), sec. 1053, reading thus: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to

the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto*, are practically without limit. The principle is applied whenever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer."

Many citations are made in support of this general principle, but we know of no case in which it has been invoked which rests upon facts like those here shown. It is, however, the claim of equity that for every wrong there is a remedy. It would deny this claim and be a discredit to the law if there were no remedy for the wrong which the evidence in this case discloses. The only adequate relief which can be afforded to this complainant is to transfer to her the property for which she has paid, and thereby, in some measure, give to her the benefits which the defendant was under obligation to provide. This is the relief which the trial court decreed and we find no error in the decree.

*Affirmed.*