ESTATE OF SALLY H. CLOPTON, DECEASED, GEORGE M. MODLIN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2047-82.        Filed August 29, 1989.

*Dennis I. Belcher* and *Kurt R. Magette,* for the petitioner.
*Scott D. Anderson, Robert J. Fitzpatrick, Calder L. Robertson,* and *Henry G. Salamy,* for the respondent.

CLAPP, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax of $85,708.96. The sole issue in this case is whether petitioner is entitled to an estate tax deduction under section 2055(a)[1] for a bequest, pursuant to a trust agreement, of $190,395 to the Virginia Education Fund, Inc. (VEF).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated herein by this reference.

Petitioner is the Estate of Sally H. Clopton, Deceased (decedent), George M. Modlin, Executor (Modlin). The estate tax return of the decedent was filed on November 13, 1978, with the Internal Revenue Service (IRS) in Memphis, Tennessee.

On February 1, 1969, decedent executed an inter vivos agreement of trust which named Modlin as trustee and in which she reserved a right to income for life. The trust was a charitable remainder unitrust, pursuant to which Kirksville College of Osteopathic Medicine, Inc. (Kirksville College), the University of Richmond, and VEF would share equally in funds from the sale of the trust estate, real property located in Virginia Beach, Virginia, or the proceeds therefrom. The trust was to terminate upon decedent's death, whereupon the principal remaining would be paid accordingly. The trust provided that if any of the three institutions was not in existence or had been dissolved, the remaining institutions would equally divide the trust estate. Decedent modified the trust on December 31, 1971. The

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

modification did not alter the provisions of the trust with respect to the distribution of its assets.

Decedent's will was drafted July 24, 1973. The residuary beneficiaries of the will are the University of Richmond, Kirksville College, and the Elma M. Smith Foundation of Mount Oberammergau, Eureka Springs, Arkansas (Smith Foundation).

VEF is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Richmond, Virginia. VEF received a ruling from the IRS that it was a tax-exempt organization under section 501(c)(3) on April 7, 1961. In a news release dated July 20, 1970, the IRS announced that it would no longer grant tax-exempt status to private schools that practiced racial discrimination, and it would not treat gifts to such schools as charitable deductions for income tax purposes. See Rev. Rul. 71-447, 1971-2 C.B. 230. On or about January 11, 1972, the IRS sent VEF a letter proposing to revoke its tax-exempt status. In Revenue Announcement 74-1 issued in the Internal Revenue Bulletin (IRB) published on January 14, 1974, the IRS announced that advanced assurance of the deductibility of contributions to listed schools was suspended for gifts made after January 14, 1974. At least two of the schools listed in Revenue Announcement 74-1 were schools which received funding from VEF. By codicil dated September 30, 1975, decedent amended her will dated July 24, 1973, to provide that no funds shall be given to the Huguenot Academy or the Bermuda Academy, schools listed in Revenue Announcement 74-1. On November 11, 1976, VEF was issued a second letter proposing revocation of its tax-exempt status. On May 24, 1977, the IRS issued VEF a determination letter revoking its tax-exempt status retroactive to the taxable year ending December 31, 1974. VEF's name was not listed in the Cumulative List of Organizations, Publication No. 78 (Cumulative List), dated October 31, 1977. The Cumulative List is the official IRS guidance on which the public can rely for determining the deductibility of charitable contributions. On December 22, 1978, the IRS reissued the determination letter dated May 24, 1977.

Decedent died on February 12, 1978. On or about September 7, 1978, in accordance with the decedent's will, the trust assets, which consisted of real property located in the City of Virginia Beach, Virginia, were sold for the sum of $571,185. Before distributing the trust assets, Modlin, as trustee, solicited and received from VEF an affidavit whereby VEF certified that it was an organization described in section 170(c).[2] He did the same with the two other beneficiary organizations. On October 20, 1978, the trustee distributed the sum of $190,395 to VEF representing its one-third of the trust assets.

On March 12, 1979, VEF filed a petition with the U.S. Tax Court requesting that the Court affirm its tax-exempt status under section 501(c)(3). On November 12, 1985, this Court in *Virginia Education Fund v. Commissioner*, 85 T.C. 743 (1985), affd. per curiam 799 F.2d 903 (4th Cir. 1986), determined that VEF was not a tax-exempt organization under section 501(c)(3), and the revocation of VEF's tax-exempt status retroactive to 1974 was proper under the circumstances.

On November 2, 1981, respondent issued a notice of deficiency to the estate. On June 28, 1985, Modlin, in his capacity as executor of the estate, executed instruments of assignment assigning to each of the residuary beneficiaries of the estate, Kirksville College, the University of Richmond, and the Smith Foundation, an undivided one-third interest in and to any claim the estate may have had against VEF. During the period from 1978 to the present, all of the residuary beneficiaries of the estate were exempt from taxation pursuant to section 501(c)(3). On March 25, 1982, the estate paid the balance of deficiency after credit for Virginia death taxes in the amount of $79,105.76. On or about that same date, the estate paid the Virginia Department of Taxation the amounts necessary to be entitled to the State death tax credit. On February 8, 1984, the estate

---

[2]Sec. 170(c)(2)(B) reads:

(2) A corporation, trust, or community chest, fund, or foundation—

$$* \qquad * \qquad * \qquad * \qquad * \qquad * \qquad *$$

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals.

paid to the IRS $31,211.37 representing all interest due on the deficiency. If petitioner proves that it is entitled to the charitable deduction, a refund will be payable to petitioner equal to all amounts previously paid with applicable interest. If petitioner receives the refund, the refund will be distributable to the residuary beneficiaries of the estate previously listed.

Modlin received a B.A. in economics and a LL.D from Wake Forest University. He received a M.A. and a Ph.D in economics from Princeton University. Modlin taught economics at Princeton University from 1927 to 1938. From 1938 to 1946, Modlin was chairman of the economics department of the University of Richmond and dean of the school of business administration. From 1946 to 1971, he was president of the University of Richmond and thereafter until 1986, he served as chancellor of the university. Modlin is currently chancellor emeritus of the University of Richmond. Modlin received no compensation for his positions as executor and trustee.

## OPINION

Section 2055(a)(3) provides an estate tax deduction of the value of the bequest made to a trustee, "but only if such contributions or gifts are to be used by such trustee or trustees * * * exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals * * * ." Decedent in this case established an inter vivos trust in February 1969, which was modified on December 31, 1971. The agreement of trust provided that upon the death of Sally Clopton, the trust assets would be paid in equal shares to the three organizations, including VEF. The notice of deficiency did not allow the charitable deduction relating to VEF as claimed pursuant to section 2055(a)(3). Petitioner must show that it is entitled to the claimed deduction. Rule 142(a). Deductions are a matter of legislative grace, and taxpayers claiming deductions must prove that they are entitled to them. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435 (1934).

Petitioner has several arguments as to why its deduction should be valid. We discuss each separately. Petitioner

concedes that VEF was not a charitable organization at the time the funds were transferred to VEF.

Petitioner first contends that because the IRS never published the revocation of VEF's tax-exempt status in the IRB, respondent failed to follow its own procedures and the deduction is valid, *despite* the fact that it was removed from the 1977 Cumulative List. Petitioner concludes that this is validated by respondent's Revenue Procedure 72-39, 1972-2 C.B. 818, which states:

Where an organization listed in Publication No. 78 ceases to qualify as an organization contributions to which are deductible under section 170 of the Code and the Service subsequently revokes a ruling or a determination letter previously issued to it, contributions made to the organization by persons unaware of the changes in the status of the organization generally will be considered allowable if made on or before the date of *publication of the Internal Revenue Bulletin announcing that contributions are no longer deductible.* [Emphasis added.]

According to Revenue Procedure 72-39, a taxpayer may rely on this protection unless it falls within certain "narrowly limited exceptions." The three exceptions listed are where the contributor (1) had knowledge of the revocation of the ruling or determination letter; (2) was aware that such revocation was imminent; or (3) was in part responsible for or was aware of the activities or deficiencies on the part of the organization that gave rise to the loss of qualification. Petitioner further interprets the Supreme Court case of *Bob Jones University v. Simon,* 416 U.S. 725 (1974), as supporting the view that the validity of contributions made to an organization listed in the Cumulative List continues regardless of the actual tax status of the donee until the IRS has published an announcement in the IRB that contributions to such organizations are no longer deductible. Petitioner concludes that because VEF was listed in the 1976 Cumulative List without the revocation being listed in the IRB prior to the distribution of the trust assets, and because no evidence exists that it falls within any of the exceptions to Revenue Procedure 72-39, a deduction should be permitted.

Respondent argues that, while a change in VEF's tax-exempt status was not published in the IRB, that VEF was deleted from the 1977 Cumulative List well before the trust transfer to VEF. That being the case, respondent gave

public notice prior to the distribution of the trust assets. Respondent furthermore contends that it is incongruous for petitioner to cite the notice in the 1976 Cumulative List yet completely ignore the more relevant notice reflected by the 1977 Cumulative List. We agree with respondent.

If an organization meets the criteria established in sections 170 and 2055, it is entitled to receive contributions which are deductible by the contributor. Whenever the IRS grants or revokes an organization's charitable tax-exempt status, its procedures call for updating its internal informational sources and notifying the public concerning the change. To notify the public about organizations which are entitled to receive tax deductible contributions, the IRS annually publishes the Cumulative List. As the tax-exempt status of organizations is revoked, their names are deleted from the Cumulative List.

To immediately notify the public about organizations that are no longer entitled to receive tax deductible contributions because their charitable tax-exempt status has been revoked, the IRS also publishes a notice in the weekly IRB. This serves as the *earliest* notice to potential donors that advance assurance of a deduction is withdrawn as to those listed organizations. The purpose of publishing revocations in the weekly IRB is to allow the IRS to notify taxpayers of such revocations prior to the release of the updated Cumulative List, which is issued each year as of October 31. Revenue Procedure 82-39, 1982-2 C.B. 759, which replaced Revenue Procedure 72-39, states that contributions to revoked organizations will be generally "allowable if made on or before the date of an appropriate public announcement, such as publication in the Internal Revenue Bulletin * * * ." Revenue Procedure 72-39 did not mean otherwise. Revenue Procedure 72-39 cites the Cumulative List as the official listing of organizations upon which "contributors may rely * * * for purposes of deducting contributions under section 170 * * * ." Furthermore, "The listing of an organization * * * signifies it has received a ruling or determination letter * * * stating that contributions by donors * * * are deductible * * * ." And, "advance assurance of deductibility * * * applies only to contributions made to an organization listed or covered by Publica-

tion No. 78 * * * ." Section 4 dealing with "Procedures Under Which Reliance Upon Publication No. 78 May Be Suspended" states that where suspension is necessary, it will be published in the IRB. Where it has not been published in the IRB, the next updated Cumulative List will serve as public notice. "Good faith requires the IRS to honor a listing for the benefit of donors until it is deleted from the list,"[3] not beyond that time. From May 24, 1977, until October 31, 1977, the date of the publication of the Cumulative List which removed VEF from its pages, petitioner could have relied upon the 1976 Cumulative List, citing VEF as tax-exempt because it was not separately listed in the IRB prior to that time. However, after that time, no reliance could be placed on the earlier Cumulative List or on the nonlisting in the IRB. *Bob Jones University v. Commissioner,* 416 U.S. at 725, is not inconsistent with this conclusion as it merely recites Revenue Procedure 72-39 and does not address this precise issue.

Petitioner's next argument is that any relevant inquiry also must focus on what Modlin knew on the date of the distribution about VEF's tax-exempt status. Because Modlin knew nothing of the revocation and relied on VEF's affidavit stating to the contrary, petitioner had no notice of the change, and the charitable deduction should stand. While we sympathize with Modlin's unfortunate situation, what he thought VEF's status was on the date the trust funds were distributed does not take precedence over VEF's actual status. As of October 31, 1977, had Modlin reviewed the Cumulative List, he would have become aware that advance assurance of deductibility of donations to VEF had been withdrawn.

We now consider petitioner's additional arguments which seek to validate the estate tax deduction. First, that the distributed funds were held in "constructive trust" by VEF for the other charitable organizations listed in the will. Second, that petitioner's assignment of its rights against VEF to the other charitable organizations perfected the charitable contribution.

---

[3]*The Synanon Church v. Commissioner,* T.C. Memo. 1989-270.

Under Virginia law, a constructive trust arises if there is actual or constructive fraud, and it is necessary to prevent such a fraud upon the plaintiff.

A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee * * * . [*Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919).]

The doctrine requires, however, that a plaintiff seek relief in a court of equity to reach the converted property or funds. See V A. Scott, Trusts, sec. 462 (3d ed. 1967); *Sweeny v. Patton*, 134 Va. 117, 113 S.E. 715 (1922); *Annon v. Lucas*, 155 W. Va. 368, 185 S.E.2d 343 (1971). Petitioner argues that a constructive trust arose in the instant case because VEF procured charitable funds from petitioner through its false affidavit, which represents misrepresentation or concealment, if not an actual fraud. See *Sweeny v. Patton*, *supra.* Petitioner argues that by virtue of VEF's executing an affidavit falsifying its tax-exempt status, VEF became a constructive trustee over the funds, which it now holds for the other charities. Because the distributive funds were held in constructive trust for charitable organizations, the deduction is valid.

Petitioner also argues that petitioner's assignments of its rights against VEF perfected the charitable contribution. Because VEF was not a tax-exempt organization on the date of the distributions, VEF had no rights in the money it received from the trust. Petitioner assigned to each of the residuary beneficiaries of the estate an undivided one-third interest in and to the claim that the estate had against VEF. Because these assignments ensure that any refund petitioner recovers will be distributed to valid and vital organizations, the assignment of the estate's rights against VEF to qualified charitable organizations perfected the charitable contribution of petitioner.

In reply to the constructive trust argument, respondent contends that it is inconceivable that legal title to the assets distributed to VEF could have been obtained through actual or constructive fraud. First, Modlin had notice as of October 31, 1977, that VEF had been deleted from the

Cumulative List. Second, decedent's codicil to the will dated September 30, 1975, should have at least raised a question concerning VEF's status in the future. Thus, respondent maintains that "given the actual or constructive notice to the executor, it is inconceivable that legal title to the assets distributed to VEF could have been obtained through actual fraud, misrepresentations, concealments, undue influence, duress or advantages of weaknesses, necessities or similar circumstances * * * ." We agree with respondent that the public notice of VEF's deletion from the Cumulative List prevents petitioner from asserting constructive fraud in this case. Finally, there is no evidence that any potential plaintiff has sought to invoke the powers of a court of equity in Virginia in about a decade since the distribution to VEF occurred, as required under Virginia law.

Respondent also contends that neither of petitioners' arguments is in line with section 2055(a)(3) or section 20.2055-2(b)(1), Estate Tax Regs.

Section 2055(a)(3) provides that:

SEC. 2055(a). IN GENERAL.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers—

* * * * * * *

(3) to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals * * * .

Pursuant to this section, it is clear that the charitable deduction sought by petitioner is available only if such contributions or gifts are to be used by such trustee exclusively for charitable purposes. Respondent points out that there is no evidence that a bona fide charitable purpose is or will ever be served while the funds are still in the possession of VEF. Because petitioner or its assignees have not demonstrated any attempts to recover the distributed trust assets from VEF or to enforce the terms of the alleged constructive trust, VEF continues to employ these assets only in furtherance of its *noncharitable* purposes. Respon-

dent concludes that because the funds are still in the hands of VEF, a *noncharitable* organization, no deduction is available under section 2055(a)(3).

Under section 20.2055-2(b)(1), Estate Tax Regs., there is an effective transfer requirement for transfers subject to a condition or power:

(b) *Transfers subject to a condition, or a power.* (1) If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible * * * .

Respondent argues that the transfer for charitable purposes in the instant case is dependent on performance of some act or happening of a precedent event, an equitable action against VEF, or the relinquishment of the distributed assets by VEF to the residuary beneficiaries. This makes these transfers analogous to transfers subject to a condition or power referred to in section 20.2055-2(b)(1), Estate Tax Regs.

The phrase "so remote as to be negligible" as it appears in section 20.2055-2(b)(1), Estate Tax Regs., has been defined as "a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a series of business transaction." See *United States v. Dean*, 224 F.2d 26, 29 (1st Cir. 1955); *Briggs v. Commissioner*, 72 T.C. 646, 656-657 (1979), affd. without published opinion 665 F.2d 1051 (9th Cir. 1981). It is likewise a chance which every dictate of reason and common sense would justify an intelligent person in disregarding and so highly improbable and remote as to be lacking in reason and substance. See *United States v. Provident Trust Co.*, 291 U.S. 272 (1934); *Briggs v. Commissioner, supra; Estate of Woodworth v. Commissioner*, 47 T.C. 193, 196 (1966). While the estate tax provisions encourage charitable bequests by authorizing deductions for charitable purposes, they provide no deductions for bequests which may never reach the charity. *Commissioner v. Sternberger's Estate*, 348 U.S. 187, 198 (1955).

While petitioner may have an acceptable charity readily available to receive the funds by virtue of the residuary clause of decedent's will, there is no guarantee that the funds will ever reach those intended charities. Petitioner has assigned its rights to bring an action against VEF to reclaim the funds, but there is no evidence in the record that any of the other charities listed who were assigned such rights have brought action. There is no evidence in the record that indicates VEF even has the funds available at this time to return to the remaining charities. Had a thorough investigation of VEF's status been conducted, petitioner could have redirected the funds in accordance with the will and the trust agreement. Rather, the funds were distributed to VEF, a noncharitable organization, and from the facts available, there is no indication that the funds have been or will be recovered from VEF for distribution to any organization with charitable purposes. We, therefore, hold on this record that the possibility that the funds will be transferred from VEF to another party is "so remote as to be negligible." As such, petitioner is not entitled to a deduction under section 2055(a)(3). For this and the other reasons discussed,

*Decision will be entered under Rule 155.*